UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAMIL ABDUL MUHAMMAD,

                 Plaintiff,

v.                                                            3:24-CV-0089
                                                             (DNH/ML)
SEC. EXCH. COMM'N, et al.,

                 Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                 Plaintiff,

v.                                                            3:24-CV-0133
                                                             (DNH/ML)
BD. OF GOVERNORS OF THE FED.
RESERVE SYS., et al.,

                 Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                 Plaintiff,

v.                                                            3:24-CV-0157
                                                             (DNH/ML)
FED. RESERVE BANK OF N.Y., et al.,

                 Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                 Plaintiff,

v.                                                            3:24-CV-0182
                                                             (DNH/ML)
U.S. DEP'T OF THE TREASURY, et al.,

                 Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                Plaintiff,

v.                                                                          3:24-CV-0197
                                                                            (DNH/ML)
OFFICE OF MGMT. AND BUDGET, et al.,

                Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                Plaintiff,

v.                                                                          3:24-CV-0208
                                                                            (DNH/ML)
INT'L MONETARY FUND, et al.,

                Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                Plaintiff,

v.                                                                          3:24-CV-0251
                                                                            (DNH/ML)
TENNESSEE VALLEY AUTH., et al.,

                Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                Plaintiff,

v.                                                                          3:24-CV-0277
                                                                            (DNH/ML)
BANK OF INT'L SETTLEMENT, et al.,

                Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                Plaintiff,

v.                                                            3:24-CV-0288
                                                              (DNH/ML)
EUROPEAN CENT. BANK, et al.,

                Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                Plaintiff,

v.                                                            3:24-CV-0298
                                                              (DNH/ML)
E. CARIBBEAN CENT. BANK, et al.,

                Defendants.

_____

JAMIL ABDUL MUHAMMAD,

                Plaintiff,

v.                                                            3:24-CV-0299
                                                              (DNH/ML)
CENT. BANK OF W. AFRICAN STATES,

                Defendant.

_____

JAMIL ABDUL MUHAMMAD,

                Plaintiff,

v.                                                            3:24-CV-0300
                                                              (DNH/ML)
BANK OF CENT. AFRICAN STATES,

                Defendant.

_____

JAMIL ABDUL MUHAMMAD,

             Plaintiff,

v.                                             3:24-CV-0360
                                             (DNH/ML)

THE WORLD BANK GRP., et al.,

             Defendants.

_____

APPEARANCES:                                OF COUNSEL:

JAMIL ABDUL MUHAMMAD
  Plaintiff, *Pro Se*
119 Clinton Street, Apartment 5
Binghamton, New York 13905

MIROSLAV LOVRIC, United States Magistrate Judge

## **ORDER and REPORT-RECOMMENDATION**

The Clerk has sent thirteen *pro se* Complaints in the above captioned actions[1] together

with applications to proceed *in forma pauperis* ("IFP") filed by Jamil Abdul Muhammad

("Plaintiff") to the Court for review.  For the reasons discussed below, I (1) grant Plaintiff's IFP

---

[1]     *Muhammad v. Sec. Exch. Comm'n, et al.*, 3:24-CV-0089 (DNH/ML) ("*Muhammad I*"); *Muhammad v. Bd. of Governors of the Fed. Reserve Sys., et al.*, 3:24-CV-0133 (DNH/ML) ("*Muhammad II*"); *Muhammad v. Fed. Reserve Bank of New York, et al.*, 3:24-CV-0157 (DNH/ML) ("*Muhammad III*"); *Muhammad v. United States Dep't of Treasury, et al.*, 3:24-CV-0182 (DNH/ML) ("*Muhammad IV*"); *Muhammad v. Office of Mgmt. and Budget, et al.*, 3:24-CV-0197 (DNH/ML) ("*Muhammad V*"); *Muhammad v. Int'l Monetary Fund, et al.*, 3:24-CV-0208 (DNH/ML) ("*Muhammad VI*"); *Muhammad v. Tennessee Valley Auth., et al.*, 3:24-CV-0251 (DNH/ML) ("*Muhammad VII*"); *Muhammad v. Bank of Int'l Settlement, et al.*, 3:24-CV-0277 (DNH/ML) ("*Muhammad VIII*"); *Muhammad v. European Cent. Bank, et al.*, 3:24-CV-0288 (DNH/ML) ("*Muhammad IX*"); *Muhammad v E. Caribbean Cent. Bank, et al.*, 3:24-CV-0298 (DNH/ML) ("*Muhammad X*"); *Muhammad v. Cent. Bank of W. African States*, 3:24-CV-0299 (DNH/ML) ("*Muhammad XI*"); *Muhammad v. Bank of Cent. African States*, 3:24-CV-0300 (DNH/ML) ("*Muhammad XII*"); and *Muhammad v. The World Bank Group, et al.*, 3:24-CV-0360 (DNH/ML) ("*Muhammad XIII*").

applications, and (2) recommend that Plaintiff's Complaints be dismissed without leave to amend.

## I.      BACKGROUND

Liberally construed,[2] Plaintiff's Complaints are largely repetitive and assert that his rights were violated by various entities and individuals named as defendants in *Muhammad I-Muhammad XIII*.  (*Muhammad I-XIII*, Dkt. No. 1.)  The Complaints are nonsensical, replete with legal jargon, and appear to relate to concerns that Plaintiff has with financial institutions.  (*Id.*)  In *Muhammad I* and *Muhammad II* Plaintiff filed supplements to the Complaints,[3] which—like the Complaints—are largely nonsensical.  (*Muhammad I*, Dkt. Nos. 3, 5; *Muhammad II*, Dkt. Nos. 4, 6.)  In *Muhammad III*, Plaintiff filed an affidavit alleging that, amongww other things, Plaintiff is "the registered owner of JAMIL ABDUL MUHAMMAD Once known as Horace Vernon Bryson."  (*Muhammad III*, Dkt. No. 4 at ¶ 3.)

Plaintiff has filed applications to proceed IFP.  (*Muhammad I*, Dkt. No. 8; *Muhammad II*, Dkt. No. 8; *Muhammad III*, Dkt. No. 6; *Muhammad IV*, Dkt. No. 6; *Muhammad V*, Dkt. No. 5; *Muhammad VI*, Dkt. No. 6; *Muhammad VII*, Dkt. No. 2; *Muhammad VIII*, Dkt. No. 2; *Muhammad IX*, Dkt. No. 2; *Muhammad X*, Dkt. No. 2; *Muhammad XI*, Dkt. No. 2; *Muhammad XII*, Dkt. No. 2; *Muhammad XIII*, Dkt. No. 2.)

---

[2]      The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[3]      Pursuant to Fed. R. Civ. P 15(d) "[o]n motion and reasonable notice, the court may . . . permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Plaintiff failed to file a motion to supplement.  In addition, the "Supplements" filed by Plaintiff do not relate to events that occurred after the respective Complaints were filed.

## II.      PLAINTIFF'S APPLICATIONS TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).[4]  After reviewing Plaintiff's IFP

applications, the Court finds that Plaintiff meets this standard.  (*Muhammad I*, Dkt. No. 8;

*Muhammad II*, Dkt. No. 8; *Muhammad III*, Dkt. No. 6; *Muhammad IV*, Dkt. No. 6; *Muhammad

V*, Dkt. No. 5; *Muhammad VI*, Dkt. No. 6; *Muhammad VII*, Dkt. No. 2; *Muhammad VIII*, Dkt.

No. 2; *Muhammad IX*, Dkt. No. 2; *Muhammad X*, Dkt. No. 2; *Muhammad XI*, Dkt. No. 2;

*Muhammad XII*, Dkt. No. 2; *Muhammad XIII*, Dkt. No. 2.)  Therefore, Plaintiff's applications to

proceed IFP are granted.[5]  (*Id*.)

## III.      LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the

court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

---

[4]      The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[5]      Plaintiff is reminded that, although his IFP applications have been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his

pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiff's Complaints with this principle in mind, I recommend that the

Complaints be dismissed without leave to amend.

As they currently stand, Plaintiff's Complaints fail to provide fair notice of the claims he

attempts to assert.  By way of example, the Complaints allege:

> This STATEMENT OF CLAIM being submitted is pursuant to 42 U.S.
> Code subsection 1983 , Conspiracy to Defraud plaintiff Civil , Human
> Rights , 42 U.S. Code Subsection 12101, Ame-Ricans with Disabilities
> Act , 18 U.S. Code Subsection 241 Conspiracy Against Rights , violating
> numerous Constitutional Rights consisting of 4th, 5th, 7th, 9th, 13th
> prohibiting slavery, peonage without just compensation.  International
> Law pursuant to article 4 forbids all forms of slavery including Modern
> day slavery and slave trading , which states no one shall be held in slavery
> or servitude.  The 14 Amendment is also being sited in this civil complaint
> for plaintiff not receiving equal protection of the law.  Failure to disclose
> (FD) and compensate Beneficial Owner , U.S. Residence Share holder ,
> Securities holder has been enforced upon Plaintiff who owns shares , stock
> , equity shares , that are traded Globally on NASDAQ , NYSE, and other
> major trading platforms as a Exchange Traded Fund (ETF) , Unit
> Investment Trust UIT) , Class A Common Stock , Penny Sock , Equity
> Shares , and Pooled Investment.

(*Muhammad I*, Dkt. No. 1 at 6; *Muhammad II*, Dkt. No. 1 at 6; *Muhammad III*, Dkt. No. 1 at 6;

*Muhammad IV*, Dkt. No. 1 at 8; *Muhammad V*, Dkt. No. 1 at 6; *Muhammad VI*, Dkt. No. 1 at 22;

*Muhammad VII*, Dkt. No. 1 at 6; *Muhammad VIII*, Dkt. No. 1 at 20; *Muhammad IX*, Dkt. No. 1

at 21; *Muhammad X*, Dkt. No. 1 at 6; *Muhammad XI*, Dkt. No. 1 at 6; *Muhammad XII*, Dkt. No.

1 at 6; *Muhammad XIII*, Dkt. No. 1 at 6 [errors in originals].)

Moreover, the Complaints state that they are seeking

> A fair resolution for relief sought in these civil matters of a Derivative suit
> against personal board members and corporate financial foreign and
> domestic agencies listed as defendant(s), plaintiff Jamil Abdul
> Muhammad is ordering the U.S. Marshall to hand deliver this initial filing

> to defendant(s) FORMS 8-K, 10-Q, 10-K, 20-F, to insure plaintiff request
> for financials and owed assets of common stock , dividends , derivatives ,
> nominal interest , of plaintiff personal property are honored and delivered
> back to plaintiff and the courts , without unfair treatment and foul play ,
> limiting excuses indicating there was never any request from plaintiff for
> such important owed assets , shares , common stock , dividends , nominal
> interest , owed and outstanding illegally detained from plaintiff.

(*Muhammad I*, Dkt. No. 1 at 8; *Muhammad II*, Dkt. No. 1 at 8; *Muhammad III*, Dkt. No. 1 at 8;

*Muhammad IV*, Dkt. No. 1 at 6; *Muhammad V*, Dkt. No. 1 at 8; *Muhammad VI*, Dkt. No. 1 at 24;

*Muhammad VII*, Dkt. No. 1 at 8; *Muhammad VIII*, Dkt. No. 1 at 22; *Muhammad IX*, Dkt. No. 1

at 23; *Muhammad X*, Dkt. No. 1 at 8; *Muhammad XI*, Dkt. No. 1 at 8; *Muhammad XII*, Dkt. No.

1 at 8; *Muhammad XIII*, Dkt. No. 1 at 8 [errors in originals].)

Given its lack of clarity, the undersigned recommends dismissal of the Complaints

because they are not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because

Plaintiff's claim or claims against the named defendants are entirely unclear.  (*Muhammad I-XIII*,

Dkt. No. 1.)

The Court also notes that Plaintiff's assertions are of the kind typically used by litigants

who affiliate themselves with the sovereign citizen movement.  The sovereign citizen movement

is "a loosely affiliated group who believe that the state and federal governments lack

constitutional legitimacy and therefore have no authority to regulate their behavior; the FBI has

labeled the sovereign citizens a domestic terrorist group."  *United States v. Ulloa*, 511 F. App'x

105, n.1 (2d Cir. 2013); *see United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019)

(cleaned up) (noting that "so-called 'Sovereign Citizens' seek to clog the wheels of justice and

delay proceedings so justice won't ultimately be done.  They do so by raising numerous—often

frivolous—arguments, many alleging that the Courts or the Constitution lack any authority

whatsoever."); *Muhammad v. Smith*, 13-CV-0760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23,

2014) (D'Agostino, J.) ("Theories presented by redemptionist and sovereign citizen adherents

have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources.") (collecting cases); *see also Balash-Ioannidou v. Contour Mortg. Corp*, 22-CV-4506, 2022 WL 3358082, at *1 (E.D.N.Y. Aug. 15, 2022) (rejecting claim that plaintiff "issued a payment through Notary Presentment to Defendants in the amount of $645,300.00" to satisfy her debt, as well as a "Notary Protest" and a "Certificate of Dishonor."); *Tyson v. Clifford*, 18-CV-1600, 2018 WL 6727538, at *3 (D. Conn. Dec. 21, 2018) ("Adherents of [redemptionist] claims or defenses 'believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings.'"); *Steinkirchner v. Gordon*, 19-CV-1241, 2020 WL 549087, at *2 (W.D. Pa. Feb. 4, 2020) ("While the Court is not in the business of issuing general advisory opinions, it can say with confidence that the Plaintiff's one-sided effort to discharge her debts does not create a legal or factual basis for the claims she struggles to assert."); *Stoute v. Navient*, 19-CV-11362, 2019 WL 13234780, at *2 (D. Mass. July 2, 2019) (rejecting the plaintiff's claim that Navient could not pursue collection on alleged student loan debt pursuant to U.C.C. § 3-505 because it failed to respond to his correspondence); *McKay v. U.S. Bank*, 14-CV-0872, 2015 WL 5657110, at *2 (M.D. Ala. Sept. 24, 2015) (denying plaintiffs' request for declaratory judgment that the defendant was not the real mortgage holder and to quiet title based upon their mailing of a "notarial presentment" and a "notarial notice of Dishonor" to the defendant bank).

As a result, I recommend that Plaintiff's Complaints be dismissed as frivolous. (*Muhammad I-XIII*, Dkt. No. 1.)

## V.  OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

In this instance, I conclude that any amendments to Plaintiff's Complaints would be futile. Plaintiff's claims and allegations are factually and legally frivolous. Any amendments to Plaintiff's Complaints are not likely to be productive and will further clog the wheels of justice. As a result, I recommend that Plaintiff's Complaints be dismissed without leave to amend. *See Igarashi v. Skull & Bone*, 438 F. App'x 58, 59-60 (2d Cir. 2011) (finding that the district court "properly dismissed the complaint without providing an opportunity to amend because any amendment would have been futile in light of the incredible nature of the allegations."); *Smith v. Jackson*, 21-CV-0005, 2021 WL 3518327, at *5 (N.D.N.Y. Jan. 11, 2021) (Lovric, M.J.)

---

[6]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

(recommending dismissal without leave to replead where the claims were frivolous and the claims could not be cured by amendment), *report and recommendation adopted*, 2021 WL 2775003 (N.D.N.Y. July 2, 2021) (D'Agostino, J.); *Herschaft v. New York City Police Dep't*, 18-CV-4770, 2018 WL 4861388, at *2 (E.D.N.Y. Sept. 28, 2018) (dismissing the complaint as frivolous and declining leave to amend where the "complaint [wa]s devoid of any basis in law or fact" and concluding that such defects "cannot be cured by amendment"); *Chicherchia v. Fox Studios*, 10-CV-0278, 2010 WL 7746199, at *3 (W.D.N.Y. July 26, 2010) (dismissing without leave to amend the plaintiff's complaint as frivolous because any amendment would be futile).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP applications (*Muhammad I*, Dkt. No. 8; *Muhammad II*, Dkt. No. 8; *Muhammad III*, Dkt. No. 6; *Muhammad IV*, Dkt. No. 6; *Muhammad V*, Dkt. No. 5; *Muhammad VI*, Dkt. No. 6; *Muhammad VII*, Dkt. No. 2; *Muhammad VIII*, Dkt. No. 2; *Muhammad IX*, Dkt. No. 2; *Muhammad X*, Dkt. No. 2; *Muhammad XI*, Dkt. No. 2; *Muhammad XII*, Dkt. No. 2; *Muhammad XIII*, Dkt. No. 2) are **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO AMEND** the Complaints (*Muhammad I-XIII*, Dkt. No. 1) as frivolous pursuant to 28 U.S.C. § 1915(e); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: June  11, 2024
       Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[7]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 3:24-cv-00197-DNH-ML Document 7 Filed 06/11/24 Page 15 of 76

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen,
Resident and Taxpayer of Town of Stuyvesant, Plaintiff,
v.
TOWN OF STUYVESANT, COLUMBIA CTY.,
N.Y.; and Valerie Bertram, Individually and as
Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box 40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI, ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP, Attorneys for Defendants, 9 Washington Square, Suite 201, P.O. Box 15085, Albany, NY 12212-5085.

**<u>DECISION and ORDER</u>**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action filed by William Pflaum ("Plaintiff") against the Town of Stuyvesant ("Town") and Valerie Bertram, Town Supervisor ("Bertram") (collectively, "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 59.) For the reasons set forth below, Defendants' motion is granted.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**
As a result of the Court's prior decisions (Dkt. Nos. 17, 26), Plaintiff's sole remaining claim in this action is his First Amendment retaliation claim. More specifically, as articulated in his Complaint (which was drafted by Plaintiff, *pro se*, and therefore must be construed with special solicitude), that claim alleges three separate ways he was retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges of ethical violations against Defendant Bertram, she (a) "collaborated with and supported" the Town's Fire Chief to deny and/or threaten to deny fire protection to Plaintiff, (b) "supported and encouraged" various Town employees to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his business," and (c) "supported and encouraged" the Town Assessor's "campaign to intimidate Plaintiff by linking [his] political speech [with his] real estate assessment." (Dkt. No. 1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing columns on his Internet blog regarding corruption among the Town's public officials, the Town filed false criminal charges against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for criticizing Bertram, the Town Assessor, and the Town, the Town Assessor used his authority to raise taxes in order to intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

**B. Defendants' Motion for Summary Judgment**
**\*2** In their motion for summary judgment, Defendants request the dismissal of Plaintiff's Complaint in its entirety. (Dkt. No. 59.) In support of their motion, Defendants make the following four arguments. First, Defendants argue that there was no adverse action against Plaintiff in that there was no actual chilling of Plaintiff's First Amendment speech or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law].)

Second, Defendants argue that, in any event, any such adverse action was not motivated or substantially caused by Plaintiff's First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was not personally involved in any deprivation of fire protection services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled to qualified immunity. (*Id.*)

**C. Plaintiff's Opposition Memorandum of Law**
Generally construed, Plaintiff makes five arguments in opposition to Defendants' motion. First, Plaintiff argues that he engaged in protected speech by creating an Internet blog on which he publicly criticized Town officials and exposed

Case 3:24-cv-00197-DNH-ML Document 7 Filed 06/11/24 Page 16 of 76

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord*, *Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension*

& Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (Compare Dkt. No. 62 [Defs.' Rule 7.1 Statement] with Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. See Davis v. Cumberland Farms, Inc., 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendants' factual assertions); Aktas v. JMC Dev. Co., Inc., 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

## 2. Undisputed Material Facts

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (Id., ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (Id., ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking from dogs on Plaintiff's property. (Id., ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that

Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (Id., ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (Id., ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (Id., ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (Id., ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (Id., ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (Id., ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (Id., ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (Id., ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (Id., ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (Id., ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (Id., ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (Id., ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (Id., ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should move out of town. (Id., ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local

town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 19 of 76

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v.*

*Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug. 2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at \*5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 20 of 76

of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011,

and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.]; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 21 of 76

by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff

interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 22 of 76

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1    Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2    The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3    As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4    The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5    For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ... of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00197-DNH-ML Document 7 Filed 06/11/24 Page 23 of 76

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

### I. SUFFICIENCY OF THE COMPLAINT

#### A. Governing Legal Standard

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that − ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis*. *See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin,* 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 24 of 76

### B. Analysis of the Complaint

A court's initial review of a complaint under § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

**(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the

Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 25 of 76

defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

## All Citations

Not Reported in Fed. Supp., 2022 WL 17517312

## Footnotes

1    Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

*1 On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt. No.
1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y.
Mar. 16, 2011)* (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting
*Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, *5 (N.D.N.Y. Nov. 2, 2015)* ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")
(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

*2 Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend
out of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)* (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")
(quotation omitted). Should Plaintiff choose to amend the
complaint, the Court urges Plaintiff to review Magistrate

Clervrain v. Robbins, Not Reported in Fed. Supp. (2023)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 27 of 76

Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3170384

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3670609
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jamil Abdul MUHAMMAD, Plaintiff,

v.

Judge Martin E. SMITH; Jason White, Assistant
District Attorney; Broome County Courts, 6th
District; American Bar Association; United States
of America; and State of New York, Defendants.

No. 3:13–cv–760 (MAD/DEP).
|
Signed July 23, 2014.

**Attorneys and Law Firms**

Jamil Abdul Muhammad, Albion, NY, pro se.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

## I. INTRODUCTION

*1 Plaintiff, who is currently a New York State prisoner but was not at the time this action was filed, commenced this civil rights action asserting claims against a sitting judge, an assistant district attorney, a county court, and the American Bar Association. *See* Dkt. No. 1. In an October 16, 2013 Report, Recommendation, and Order, Magistrate Judge Peebles conducted an initial review of the complaint and recommended that the complaint be dismissed, with leave to replead only as to any claims asserted against Defendant American Bar Association. *See* Dkt. No. 19.

Currently before the Court is Magistrate Judge Peebles' Report, Recommendation, and Order and Plaintiff's objections thereto.

## II. BACKGROUND

Plaintiff's complaint and his many subsequent filings are largely unintelligible. In his complaint, Plaintiff identifies himself as a "Moor/Sovereign/a Freeman On The Land/ a Man, Real Live Flesh and Blood [.]" Dkt. No. 1 at 3. Plaintiff claims that, through his "unalienated rights under UCC 1–207(308)," he is "entitled to any Interpleded Funds relative to JAMIL ABDUL MUHAMMAD, and the defendant is determined to be Barred from any collection of my alleged debt from JAMIL ABDUL MUHAMMAD relating to Jamil Abdul Muhammad and defendant had in no 'CLAIM IN FACT.' " *Id.* at 5.

From other submissions submitted by Plaintiff, it appears that Plaintiff was sentenced by Broome County Court Judge Martin E. Smith, a named Defendant, based upon a plea of guilty entered in that court. *See* Dkt. No. 7 at 2. Plaintiff appears to allege that, as a result of those proceedings, Judge Smith is guilty of kidnapping, and is liable for conspiracy to violate his civil rights in violation of 18 U.S.C. § 241. *See id.* Further, Plaintiff makes vague references to a clerk in Binghamton named "Karen," and claims that she and other Defendants have placed him in imminent harm. *See* Dkt. No. 21 at 4–5. Plaintiff asks the Court to award him "the dismissal of said charges" and to release him "by implying said 'habeas corpus' granting [him] immediate release of confinement[.]" *Id.* at 5.

In a Report, Recommendation, and Order, Magistrate Judge Peebles granted Plaintiff's motion to proceed *in forma pauperis* and then conducted an initial review of the complaint. *See* Dkt. No. 19. Magistrate Judge Peebles noted that Plaintiff's complaint failed to meet the minimal pleading standards set forth in Rule 8 of the Federal Rules of Civil Procedure, as well as *Twombly* and its progeny. *See id.* at 7. In light of his *pro se* status, however, Magistrate Judge Peebles considered Plaintiff's subsequent filings to determine if he has set forth a plausible claim against any named Defendant. *See id.* at 8.

Magistrate Judge Peebles first found that Defendants Smith and White are entitled to absolute immunity because Plaintiff's claims against them are associated with his prosecution in Broome County. *See id.* at 8–9. Further, the report found that Plaintiff's claims brought pursuant to 18 U.S.C. § 241 should be dismissed because it is a criminal statute that does not give rise to a private cause of action. *See id.* at 9 n. 6 (citations omitted). Next, Magistrate Judge Peebles concluded that Plaintiff's claims against the Broome County Courts must be dismissed because they are an extension of the state, immune from suit under the Eleventh Amendment. *See id.* at 10. Thereafter, Magistrate Judge Peebles found that the Court should dismiss Plaintiff's claims

against Defendant American Bar Association ("ABA") because Plaintiff failed to allege any facts to plausibly suggest that Defendant ABA is a state actor, or that it acted under color of state law when allegedly violating Plaintiff's rights. *See id.* at 10–11. Finally, Magistrate Judge Peebles recommended that the Court dismiss all claims with prejudice, except those asserted against Defendant ABA. *See id.* at 12–13.

**\*2** Currently before the Court are Magistrate Judge Peebles Report, Recommendation, and Order, and Plaintiff's objections thereto. Additionally pending before the Court are several letter motions, along with an amended complaint Plaintiff filed after the issuance of the Report, Recommendation, and Order.

### III. DISCUSSION

**A. Redemptionist and sovereign citizen theories**
Plaintiff's assertions appear to be based, at least in part, on the "redemptionist" theory or the related "sovereign citizen" theory, which are frivolous legal theories that have been consistently rejected by federal courts. *See Monroe v. Beard,* 536 F.3d 198, 203 n. 4 (3d Cir.2008). The United States Court of Appeals for the Third Circuit explained:

> "Redemptionist" theory ... propounds that a person has a split personality: a real person and a fictional person called the "strawman." The "strawman" purportedly came into being when the United States went off the gold standard in 19[3]3, and, instead, pledged the strawman of its citizens as collateral for the country's national debt. Redemptionists claim that government has power only over the strawman and not over the live person, who remains free. Individuals can free themselves by filing UCC financing statements, thereby acquiring an interest in their strawman. Thereafter, the real person can demand that government officials pay enormous sums of money to use the strawman's name or, in the case of prisoners, to keep him in custody. If government officials refuse, inmates

are encouraged to file liens against correctional officers and other prison officials in order to extort their release from prison. Adherents of this scheme also advocate that inmates copyright their names to justify filing liens against officials using their names in public records such as indictments or court papers.

*Id.* (citation omitted). [1]

Plaintiff also apparently adheres to the Redemptionist theory regarding the use of capital letters:

> Redemptionists claim that by a birth certificate, the government created strawmen out of its citizens. A person's name spelled in English, that is with initial capital letters and small letters, represents the real person, that is, the flesh and blood person. Whenever a person's name is written in total capitals, however, as it is on a birth certificate, the Redemptionists believe that only the strawman is referenced, and the flesh and blood person is not involved.

*McLaughlin v. CitiMortqage, Inc.,* 726 F.Supp.2d 201, 210 (D.Conn.2010) (internal quotation marks omitted); *see also Bryant v. Wash. Mut. Bank,* 524 F.Supp.2d 753, 758–61 (W.D.Va.2007).

Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources. *See McLaughlin v,* 726 F.Supp.2d at 210 (providing detailed explanation of the redemptionist theory and rejecting it); *Charlotte v. Hanson,* 433 Fed. Appx. 660, 661 (10th Cir.2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted). A prisoner's attempt "to avoid the consequences of his criminal conviction" based on the redemptionist theory, has been recognized as "legally frivolous," *Ferguson—El v. Virginia,*

No. 3:10CV577, 2011 WL 3652327, *3 (E.D.Va. Aug.18, 2011), and civil cases based on redemptionist and sovereign citizen theories have been found to be "utterly frivolous" and "patently ludicrous," using "tactics" that are "a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars." *Barber v. Countrywide Home Loans, Inc.,* No. 2:09cv40, 2010 WL 398915, *4 (W.D.N.C. Oct.7, 2009).

**\*3** In short, Plaintiff seeks to avoid the consequences of his conviction by suggesting he exists as two separate legal entities and that the State of New York and Broome County do not have jurisdiction over both entities and thus must release him and pay him damages. Such a theory is legally frivolous. *See Tirado v. New Jersey,* No. 10–3408(JAP), 2011 WL 1256624, *4–5 (D.N.J. Mar.28, 2011) (observing a similar argument "has absolutely no legal basis"); *Marshall v. Fla. Dep't Corr.,* No. 10–CV–20101, 2010 WL 6394565, *1 (S.D.Fla. Oct.27, 2010). Although the Court finds that these theories are frivolous, in light of his *pro se* status, the Court will consider each possible claim in greater detail.

## B. The Report, Recommendation, and Order

Section 1915(e) (2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, although the Court has the duty to show liberality toward *pro se* litigants, *see Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983) (internal citations omitted), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis .* [3]

When reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading that sets forth a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed.R.Civ.P. 8(a)(2). The purpose of Rule 8 " ' 'is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, ...

prepare an adequate defense,' " and determine whether the doctrine of res judicata is applicable. *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, *1 (S.D.N.Y. Nov.30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977))) (other citation omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

**\*4** When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must

be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec 'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989)* (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

Having reviewed the Report, Recommendation, and Order and Plaintiff's objections thereto, the Court finds that Magistrate Judge Peebles correctly determined that Plaintiff's claims should be dismissed. As explained below, however, the Court rejects Magistrate Judge Peebles' recommendation insofar as it found that Plaintiff should be permitted a chance to amend his complaint as to Defendant ABA.

Section 1983 itself does not create any substantive rights; rather, it provides a procedural mechanism for redressing the deprivation of rights created by the Constitution or laws of the United States. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). To state a cognizable claim under Section 1983, a plaintiff must allege that " '(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " *Weiss v. Inc. Village of Sag Harbor,* 762 F.Supp.2d 560, 568 (E.D.N.Y.2011) (quoting *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999)).

 **\*5** The Supreme Court, in *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), established a two-prong test for determining when a private party's actions can be deemed to satisfy Section 1983's requirement that the challenged conduct was "under color of state law." Actions of a private party can be deemed "fairly attributable" to the state, and therefore treated as action taken "under color of state law," when (1) the deprivation is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state actor ." *Hollander v. Copacabana Nightclub,* 624 F.3d 30, 33 (2d Cir.2010) (quoting *Lugar,* 457

U.S. at 937). A private party's actions may be attributable to the state under the second *Lugar* prong if it meets one of three tests: (1) "The 'compulsion test': the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state"; (2) "The 'public function test': the entity 'has been delegated a public function by the [s]tate' "; or (3) "The 'joint action test' or 'close nexus test': the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies." *Hollander,* 624 F.3d at 34 (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir.2008) (internal citations omitted)).

In the present matter, Defendant ABA is a private party which does not meet any of the three tests set forth above. Courts throughout the United States have already addressed this question and they have unanimously held that the American Bar Association is not a state actor for purposes of a Section 1983 action. *See Hu v. American Bar Ass'n,* 334 Fed. Appx. 17, 18–19 (7th Cir.2009) (finding that the district court properly dismissed the plaintiff's complaint because the ABA is not a state actor); *Lawline v. American Bar Ass 'n,* 956 F.2d 1378, 1385 (7th Cir.1992) (concluding that "private bar associations are not state actors for the purpose of Section 1983"); *Rohan v. American Bar Ass'n,* No. 93 CV 1338, 1995 WL 347035, *6–*7 (E.D.N.Y. May 31, 1995) (holding that the ABA is a professional association, not a state actor, even though admission to practice law in New York State requires graduation from an ABA-accredited law school, because "the State of New York has not explicitly delegated to the ABA its responsibility for setting the requirements that an individual must meet in order to be licensed as an attorney-at-law" and "any conferral of monopoly status on the ABA by New York State does not convert the ABA into a state actor"); *see also The Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs.,* 608 F.3d 110, 121–22 (1st Cir.2010) (finding that state bar association was not a state actor).

 **\*6** In the present matter, the Court agrees that Defendant ABA is not a state actor for Section 1983 purposes. New York has not expressly delegated to the ABA its responsibility for setting the requirements to practice law in New York; rather, to become a member of the New York Bar, an individual must comply with the Rules of the New York Court of Appeals on admission to practice. *See Rohan,* 1995 WL 347035, at *5. Further, the ABA was neither established by the State of New York, nor is it funded or supported by the State. *See id.* at *7 (citations omitted). Additionally, school accreditation has been recognized as a function of private entities, rather than

one that "has been traditionally the exclusive prerogative of the State." *Id.* (quotation and other citation omitted).

Based on the foregoing, the Court finds that Defendant ABA is not a state actor. As such, the Court rejects Magistrate Judge Peebles' recommendation only insofar as the report recommended that the Court dismiss the claims against Defendant ABA without prejudice. Although the Court should generally permit a *pro se* litigant an opportunity to amend, dismissal with prejudice is appropriate where, as here, any amendment of the complaint would be futile.

Further, the Court finds that Magistrate Judge Peebles correctly determined that Defendants Smith and White are entitled to absolute immunity since Plaintiff has raised claims against them in their capacities as a judge and prosecutor. *See Hill v. City of New York,* 45 F.3d 653, 660–61 (2d Cir.1995) (quotation omitted); *DuQuin v. Kolbert,* 320 F.Supp.2d 39, 40–41 (W.D.N.Y.2004) (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts are barred by the Eleventh Amendment. *See Thomas v. Bailey,* No. 10–cv–51, 2010 WL 662416, *1 (E.D.N.Y. Feb.22, 2010). Finally, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez,* 411 U.S. 475, 498–99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1975); *see also Brown v. Freeport Police Dept.,* Nos. 13 CV 4047, 13 CV 6514, 2014 WL 279847, *5 (E.D.N.Y. Jan.23, 2014) (citation omitted).

## C. Plaintiff's amended complaint

In his amended complaint, Plaintiff names as Defendants the "United States of America/Foreign Corporation of United States," and the State of New York, as well as the previously named Defendants. *See* Dkt. No. 34 at 1–2. In the amended complaint, Plaintiff claims that the "United States of America is guilty of criminal infringement of intellectual property, failure of consideration, act of indemnity, insurance fraud, securities fraud," as well as an apparent violation of section 34 of the Judiciary Act[4] and a conspiracy with the other named Defendants in violation of 18 U.S.C. § 241. *See id.* at 4. Plaintiff claims that Defendants' actions were "in violation of misnomer contracts of surety" and led to his "wrongfull [sic] imprisonment via commercial claims alleging DEATH and DEBT." *Id.* Plaintiff is seeking his immediate release, in addition to $150,0000,000 "upon court ordered 'Release' from cestui que vie life insurance policy and foreign

corporation of United States." *Id.* at 6. Additionally, Plaintiff asks the Court to "expunge all criminal proceedings, charges, finger prints, DNA, blood, mugshots, arrest/arrest record of alleged charges do to illegal commercial ... surety contracts alleging DEATH or DEBT upon 'RELEASE' being granted." *Id.*

**\*7** Having reviewed the amended complaint, the Court finds that Plaintiff has failed to plausibly allege that he is entitled to any of the relief he seeks. A plaintiff may not collect damages for his alleged wrongful imprisonment or conviction without first showing "that [his] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Here, Plaintiff has made no such showing and a review of the Department of Corrections and Community Supervision website demonstrates that Plaintiff is still incarcerated.

Additionally, 18 U.S.C. § 241 is a criminal statute which does not create a private cause of action. *See Storm–Eggink v. Gottfried,* 409 Fed. Appx. 426, 427 (2d Cir.2011) (citing cases).

Again, as discussed above, Plaintiff's claims against Defendants Smith and White must be dismissed because they are entitled to absolute immunity. *See Hill,* 45 F.3d at 660–61 (quotation omitted); *DuQuin,* 320 F.Supp.2d at 40–41 (citation omitted). Additionally, Plaintiff's claims against the Broome County Courts and the State of New York are barred by the Eleventh Amendment. *See Thomas,* 2010 WL 662416, at * 1. Further, to the extent that Plaintiff is seeking his immediate release from custody, such relief is only available from this Court by way of a writ of habeas corpus, issued pursuant to 28 U.S.C. § 2254. *See Preiser,* 411 U.S. at 498–99; *see also Brown,* 2014 WL 279847, at *5 (citation omitted). Finally, Plaintiff alleges no facts against Defendant United States. Rather, the United States appears to have been included as a Defendant solely under Plaintiff's ludicrous sovereign citizen and redemptionist theories, which are subject to dismissal.

Based on the foregoing, the Court finds that Plaintiff's amended complaint fails to set forth any non-frivolous causes of action. Since permitting additional amendment would be futile, Plaintiff's amended complaint is dismissed with prejudice.

In view of the frivolous nature of Plaintiff's claims, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962); *see also Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

### IV. CONCLUSION

After carefully considering Magistrate Judge Peebles' Report, Recommendation, and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Peebles' October 16, 2013 Report, Recommendation, and Order is **ADOPTED in part and REJECTED in part;** [5] and the Court further

**ORDERS** that Plaintiff's complaint and amended complaint are **DISMISSED with prejudice;** and the Court further

**\*8 ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall terminate all pending motions not addressed in this Memorandum–Decision and Order as moot; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this Memorandum–Decision and Order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3670609

### Footnotes

1     The Court notes that Plaintiff was convicted of Falsifying Business Records in the First Degree.

2     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

3     "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915e is appropriate to prevent abuses of the process of the court," *Nelson v. Spitzer,* No. 9:07–CV–1241, 2008 WL 268215, *1 n. 3 (N.D.N.Y. Jan.29, 2008) (citation omitted), as well as "to discourage the filing of [baseless lawsuits], and [the] waste of judicial ... resources[.]" *Neitzke,* 490 U.S. at 327.

4     Originally § 34 of the Judiciary Act of 1789, the Rules of Decision Act, now contained in 28 U.S.C. § 1652, reads: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply." It is unclear how an improper application of the Rules of Decision Act violated Plaintiff's rights and Plaintiff's nearly incomprehensible filings provide no insight.

5     Magistrate Judge Peebles' Report, Recommendation, and Order is only rejected insofar as it recommended that the Court dismiss Defendant ABA without prejudice.

2022 WL 3358082
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Anna T. BALASH-IOANNIDOU, Plaintiff,

v.

CONTOUR MORTGAGE CORPORATION;
Wilmington Savings Fund Society, FSB, Defendants.

22-CV-4506 (AMD) (LB)
|
Signed August 15, 2022

**Attorneys and Law Firms**

Anna T. Balash-Ioannidou, Astoria, NY, Pro Se.

### MEMORANDUM AND ORDER

ANN M. DONNELLY, United States District Judge:

**\*1** On July 22, 2022, the *pro se* plaintiff, Anna T. Balash-Ioannidou, filed a complaint against defendants Contour Mortgage Corporation ("Contour") and Wilmington Savings Fund Society, FSB ("Wilmington") in the United States District Court for the Southern District of New York seeking declaratory and injunctive relief with regards to foreclosure proceedings involving real property located in Astoria, Queens County, New York. (ECF No. 1.) The plaintiff also submitted an unsigned order to show cause seeking to enjoin "all actions ... including calculations, notice of sale, auction of property, sale of property and transfer" of the property located at 21-08 30 <sup>th</sup> Avenue, Astoria, New York ("the property") in her Supreme Court of the State of New York, Queens County, Index No. 707379/2015 ("Queens County Supreme Court") foreclosure action. (ECF No. 2.) On August 1, 2022, the action was transferred to this Court. For the reasons set forth below, the case is dismissed for lack of subject matter jurisdiction.

### BACKGROUND

On July 14, 2015, a foreclosure action was instituted against the plaintiff in Queens County Supreme Court seeking final judgment and the sale of the property to satisfy the mortgage in the amount of $645,300.00. Contour was the original lender; Wilmington now holds the mortgage and lien and is the "current foreclosing party" on the property in the Queens County Supreme Court foreclosure action. (ECF No. 1 at 2.) The plaintiff asserts that she has "issued a payment through Notary Presentment to Defendants in the amount of $645,300.00" to satisfy her debt, as well as a "Notary Protest" and a "Certificate of Dishonor." (*Id.* at 3.) She seeks this Court's involvement in the dispute over her alleged satisfaction of the mortgage, for removal of the lien on the property and for "injunctive relief from the ongoing foreclosure action." (ECF No. 1 at 4-5.)

### STANDARD OF REVIEW

In reviewing the plaintiff's complaint, the Court is mindful that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). A district court may dismiss a *pro se* action *sua sponte*, that is, on its own—even if the plaintiff has paid the requisite filing fee—if the action is frivolous, *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or if the court lacks subject matter jurisdiction over the matter. Fed. R. Civ. P. 12(h)(3). "Failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(h)(3). Federal subject matter jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiffs and defendants are of diverse citizenship, and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332.

### DISCUSSION

#### A. *Younger* Abstention

**\*2** Under the abstention doctrine set out by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 43-45 (1971), this Court lacks jurisdiction over the plaintiff's claims. "The defining feature of *Younger* abstention is that even though either a federal or a state court could adjudicate a given claim, when there is an ongoing state proceeding in which the claim can be raised, and when adjudicating the claim in federal court would interfere unduly with the ongoing state proceeding, the claim is more appropriately adjudicated in state court." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000). *Younger* abstention is triggered by three categories of

state court proceedings: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013).

Here, the third prong of the *Sprint* rationale applies. "[F]ederal court intervention in an on-going state foreclosure proceeding ... [is] generally barred by *Younger v. Harris*." *Fequiere v. Tribeca Lending*, No. 14-CV-812, 2015 WL 1412580, at *7 (E.D.N.Y. Mar. 20, 2015) (quoting *Marcelo v. EMC Mortg. Corp.*, No. 10-CV-5964, 2011 WL 1792671, at *4 (E.D.N.Y. May 6, 2011)). The plaintiff seeks declaratory injunctive relief relating to the same property that is the subject matter of the underlying state court actions. The plaintiff's remedies are therefore limited to state court—either in the original venue, or on appeal to the state appellate court. *Younger* abstention bars her from seeking injunctive and declaratory relief in a federal court.

### B. The Anti-Injunction Act

The plaintiff's request for injunctive relief is also precluded by the Anti-Injunction Act, which provides that, "[a] court of the United States may not grant an injunction to stay proceedings in State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This provision applies when the requested injunction would either stay the ongoing state proceedings or prevent the parties from enforcing an order that has already issued. *See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs.*, 398 U.S. 281, 294 (1970). Courts in this Circuit have consistently held that the Anti-Injunction Act applies in the context of pending state court foreclosure proceedings. *See DiMicco v. CitiMortgage, Inc.*, No. 20-CV-755, 2020 WL 804949, at *3 (E.D.N.Y. Feb. 18, 2020); *Abbatiello v. Wells Fargo Bank, N.A.*, No. 15-CV-4210, 2015 WL 5884797, at *5 (E.D.N.Y. Oct. 8, 2015) (collecting cases).

### C. Frivolous Claim

Finally, the Court would dismiss this case even if it had jurisdiction, because the claims are frivolous. The basis for the plaintiff's claim is that she has satisfied her debt and is entitled to release from the lien on her property because she mailed a "notary presentment" and related documents to defendants. (ECF No. 1 at 1-4.) These documents (*id.* at 7-18), appear to be asserting some sort of "sovereign citizen" claim. *See United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013) ("[S]overeign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior; the FBI has labeled the sovereign citizens a domestic terrorist group."). People who identify as sovereign citizens use maneuvers like the notary presentment to avoid paying debts or to collect debts that are not actually owed. *See, e.g.*, *Kesick v. Ulloa*, No. 10-CV-1248, 2012 WL 2873364, at *3 (N.D.N.Y. July 12, 2012) (Ulloa filed fraudulent papers entitled "notary presentment" with the Town of Ulster Justice Court falsely claiming that a Justice of the Ulster Town Court owed him the sum of $176,000,000.00); *see also McKay v. U.S. Bank*, No. 14-CV-872, 2015 WL 5657110, at *2 (M.D. Ala. Sept. 24, 2015) (denying plaintiffs' request for declaratory judgment that the defendant was not the real mortgage holder and to quiet title based upon their mailing of a "notarial presentment" and a "notarial notice of Dishonor" to the defendant bank). To the extent the plaintiff claims that her notary presentment discharges her debt, the claim lacks an arguable basis in law or fact. *Muhammad v. Smith*, No. 13-CV-760, 2014 WL 3670609, at *2 (N.D.N.Y. July 23, 2014) ("Theories presented by redemptionist and sovereign citizen adherents have not only been rejected by the courts, but also recognized as frivolous and a waste of court resources.") (collecting cases).

### CONCLUSION

**\*3** Accordingly, the instant *pro se* complaint is dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3). The motion for preliminary injunctive relief is denied. Further, in keeping with its duty to liberally construe *pro se* complaints, the Court has considered whether to grant leave to amend the complaint but finds that amendment would be futile. *See Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 124-25 (2d Cir. 2011).

Although the plaintiff paid the filing fee to bring this action, the Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any *in forma pauperis* appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

### SO ORDERED.

Balash-Ioannidou v. Contour Mortgage Corporation, Not Reported in Fed. Supp. (2022)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 36 of 76

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3358082

---

**End of Document**
© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 37 of 76

2018 WL 6727538
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Deshawn TYSON, Plaintiff,

v.

Patrick J. CLIFFORD, et al., Defendants.

CIVIL CASE NO. 3:18cv1600(JCH)

|

Signed 12/21/2018

**Attorneys and Law Firms**

Deshawn Tyson, Suffield, CT, pro se.

**INITIAL REVIEW ORDER**

Janet C. Hall, United States District Judge

**\*1** The plaintiff, Deshawn Tyson ("Tyson"), is confined at MacDougall-Walker Correctional Institution. He has filed a pro se civil rights action pursuant to section 1983 of title 42 of the United States Code against New Haven Superior Court Judge Patrick J. Clifford ("Judge Clifford") and Connecticut State's Attorney John P. Doyle, Jr. ("Attorney Doyle"). For the reasons set forth below, the Complaint is dismissed.

**I. STANDARD OF REVIEW**

Pursuant to section 1915A(b) of title 28 of the United States Code, the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Id. This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only " 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007) ). Although courts still have an obligation to interpret "a pro se complaint liberally," the Complaint must still include sufficient factual allegations to meet the standard of facial plausibility. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**II. FACTS**

Tyson states that he has been "wrong[ly] incarcerated" in a facility within the State of Connecticut Department of Correction since March 10, 2016. [1] See Compl. (Doc. No. 1) at 22. The State of Connecticut Judicial Branch website reflects that New Haven police officers arrested Tyson on March 10, 2016, and that the State of Connecticut has charged him in a criminal case filed in the Connecticut Superior Court for the Judicial District of New Haven with one count of sexual assault in the first degree, in violation of Conn. Gen. Stat. § 53a-70(a)(1), and one count of unlawful restraint in the first degree, in violation of Conn. Gen. Stat. § 53a-95. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Mar. 10, 2016). [2] The case detail indicates that Tyson is represented by counsel and that a jury trial is scheduled for December 16, 2020. See id.

**\*2** Tyson alleges that, on or about July 26, 2018, in the Connecticut Superior Court for the Judicial District of New Haven, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard any motions, memoranda, or affidavits filed by Tyson. See Compl. at 5 ¶ 1, 22. Judge Clifford has ruled against Tyson even when Attorney Doyle refused to oppose Tyson's motions. See id. at 17.

On or about August 22, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to remain silent during a pretrial hearing and that Attorney Doyle agreed to do so. See id. at 5 ¶ 2. On or about September 12, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard Tyson's

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 38 of 76

"Conditional Acceptance/Negotiable instrument/grievance" document. See id. at 5 ¶ 3. On that same date, Judge Clifford informed Tyson that he would not consider any motions that Tyson might file. See id. at 5 ¶ 4. Tyson generally asserts that Judge Clifford and Attorney Doyle have misapplied statutes and laws and have failed to provide him with "Discovery/ Brady material." Id. at 6 ¶¶ 6, 17–18.

At one point during the criminal proceeding, Judge Clifford issued an order that Tyson could represent himself. See id. at 22. Judge Clifford subsequently attempted to appoint an attorney to represent Tyson even though the attorney had made threats against Tyson in the past. See id.

## III. DISCUSSION

Tyson alleges that the defendants violated his rights under the First, Fifth, Eighth, Ninth and Fourteenth Amendments as well as under sections 241 and 242 of title 18 of the United States Code. See id. at 17–18. Tyson seeks punitive, compensatory, nominal, and exemplary damages, as well as injunctive and declaratory relief. See id. at 6–7.

As a preliminary matter, the court notes that Tyson includes the following additional allegations in the Complaint. The "State of CT has declared me/plaintiff sovereign [f]rom itself, as establish[ed] by law, because I/plaintiff had/has no residency with the state and therefore plaintiff is not only a private man as opposed to a corporate fiction." See id. at 6 ¶ 7. Tyson asserts that he cannot be "named in any statutes" and has "a Reservation of Rights which was made known to all defendants." See id. at 6 ¶¶ 8–10. Tyson contends that, throughout his criminal case, "defendants [have] refuse[d] to adhere to the Supremacy Clause of the United States Supreme Court rulings." See id. at 6 ¶ 5. Tyson signs the Complaint as: "Secured Party, Sui Juris, one of the sovereign people, a private man on the land, non-combatant, an American by birth, and child of the living God, Grantor, Secured Party/Creditor and principal of which 'Rights' existed long antecedent to the Organization of the State and Trustee." Id. at 33. Attached to the Complaint is a document titled "Memorandum of Law with points and Authorities on 'sovereignty' of the people In Relationship to 'Government' of the several Compact De-facto State and the Federal Government." Id. at 25–32.

This language and the title of the attachment to the Complaint suggest that Tyson considers himself a "sovereign citizen." In United States v. Ulloa, 511 F. App'x. 105 (2d Cir. 2013), the Second Circuit described, "sovereign citizens," as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." Id. at 107 n.1.

**\*3** Adherents of such claims or defenses "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011) (citations omitted). Federal courts across the country, however, have routinely refused to credit arguments based on a redemption, sovereign citizen, or other similar theory because the arguments are often frivolous, irrational and unintelligible. See United States v. Sterling, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts have summarily rejected sovereign citizens' legal theories as frivolous); United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a sovereign citizen, a secured-party creditor, or a flesh-and-blood human being, that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.") (internal quotation marks omitted); Charlotte v. Hanson, 433 F. App'x. 660, 661 (10th Cir. 2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted); United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992) (holding that "sovereign citizen" argument was "completely without merit" and "patently frivolous"); Akbar v. Clarke, No. 1:15-CV-338(AJT/TCB), 2016 WL 4150456, at *7 (E.D. Va. Aug. 1, 2016) (noting that sovereign citizen claims are "wholly frivolous"); Berman v. Stephens, No. 4:14-CV-860-A, 2015 WL 3622694, at *2 (N.D. Tex. June 10, 2015) (finding that a prisoner's "reliance on the UCC or a so-called 'sovereign citizen' theory that he is exempt from prosecution and beyond the jurisdiction of the state or federal courts is frivolous") (collecting cases); Gaskins v. South Carolina, C/ A No. 2:15-cv-2589 DCN, 2015 WL 6464440, at *4 (D.S.C. Oct. 26, 2015) (affirming recommended ruling dismissing as baseless prisoner's claim, premised upon "sovereign citizen" theory, that the state court lacked jurisdiction over her and that her state conviction was therefore void); Paul v. New York, No. 13-CV-5047 (SJF)(AKT), 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013) (dismissing complaint as factually and legally frivolous because "[t]he conspiracy and legal revisionist theories of sovereign citizens are not established law in this court or anywhere in this country's valid legal system") (internal quotation marks and citation omitted).

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 39 of 76

It is apparent that Tyson is claiming that, as a "sovereign citizen," he is not subject to the jurisdiction of the State of Connecticut or the Connecticut Superior Court and that any criminal charges against him must be dismissed. To the extent that he challenges the jurisdiction of the State of Connecticut, its courts, or Judge Clifford, or the authority of the State, through Attorney Doyle, to prosecute him for a criminal offense, based on a "sovereign citizen" theory, the court concludes that the claim lacks an arguable legal basis. Thus, that claim is dismissed. See 28 U.S.C. § 1915A(b)(1). To the extent that Tyson is challenging the conduct of the defendants on other grounds, the court addresses those claims below.

A. Requests for Injunctive and Declaratory Relief

Tyson seeks a declaration that the defendants violated his constitutional and federal protected rights and an injunction directing the defendants to cease and desist from making further contact with him or harassing him in violation of his rights. See Compl. at 7. He includes, an "Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order," as an attachment to the Complaint, which seeks a court order that the defendants be enjoined from various types of conduct in connection with his state criminal case. See id. at 19–20.

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that a federal court, except in cases where an injunction is necessary to prevent immediate and irreparable injury to a defendant, should not enjoin a pending state court criminal proceeding. Id. at 45. The doctrine of federal abstention, as outlined in Younger, "is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." Schlagler v. Phillips, 166 F.3d 439, 442 (2d Cir. 1999). It "is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted).

In Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013), the Supreme Court clarified that courts should abstain under Younger only in three "exceptional circumstances": (1) pending state criminal proceedings; (2) civil enforcement proceedings that are "akin to criminal prosecutions;" and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." See id. at 72. The

court may address the applicability of the Younger abstention doctrine sua sponte. See Catlin v. Ambach, 820 F.2d 588, 591 (2d Cir. 1987) (citing Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976) ). The Younger doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief. See Samuels v. Mackell, 401 U.S. 66, 73 (1971) (holding Younger's policy would "be frustrated as much by a declaratory judgment as it would be by an injunction").

*4  It is clear from the Complaint and the State of Connecticut Judicial Branch website, that Tyson's state criminal proceeding stemming from his arrest on March 10, 2016 is ongoing. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Nov. 30, 2018). If the court were to grant Tyson's request for a court order directing the defendants to dismiss the criminal charges against Tyson, or were to declare that the defendants had violated Tyson's federal constitutional rights in presiding over and prosecuting Tyson's state criminal case, such Orders would interfere with Tyson's pending state criminal proceeding.

There are two exceptions to the Younger abstention doctrine: bad faith and extraordinary circumstances. See Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 197–198 (2d Cir. 2002). Abstention may be inappropriate if "a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." Id. at 199 (internal quotation marks and citation omitted). This exception focuses on the subjective intent or motivation of the state prosecutor who initiates the proceeding. See id. ("A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception.") (citation omitted).

The Second Circuit has described the extraordinary circumstances necessary to invoke the second exception to abstention under Younger as circumstances that "render the state court incapable of fairly and fully adjudicating the federal issues before it" and "creat[e] an extraordinarily pressing need for immediate federal equitable relief." Id. at 201 (citation omitted). Application of the extraordinary circumstances exception requires "two predicates ... (1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 40 of 76

and immediate' harm if the federal court does not intervene." Id. (citation omitted) (emphasis in original).

Tyson has alleged no facts to suggest that the prosecutor initiated the criminal action against him in bad faith or with "no reasonable expectation of obtaining a favorable outcome." Id. at 199 (internal quotation marks and citation omitted). Nor has Tyson alleged the absence of a remedy available in state court to challenge any alleged constitutional violations associated with his criminal prosecution. Tyson is not precluded from challenging any subsequent conviction or sentence on appeal to the Connecticut Appellate and Supreme Courts, filing a habeas petition in the Connecticut Superior Court, and following that, a habeas petition in federal court. Furthermore, Tyson has not alleged that he will suffer imminent harm if this court does not intervene in the ongoing prosecution. See Davis v. Lansing, 851 F.2d 72, 77 (2d Cir. 1988) (holding the burden of defending criminal prosecution is insufficient, without more, to constitute irreparable harm); Saunders v. Flanagan, 62 F. Supp. 2d 629, 635 (D. Conn. 1999) ("That the plaintiff will be forced to defend against a charge of murder in state court does not constitute the extraordinary circumstances resulting in irreparable harm warranting this court to refuse to apply the doctrine of Younger abstention, and no other specific basis of 'extraordinary circumstances' is asserted.").

 *5  Because there are no facts alleged to plausibly suggest that either of the narrow exceptions to the Younger abstention doctrine have been met, the court abstains from exercising jurisdiction over the requests for injunctive and declaratory relief seeking intervention in Tyson's ongoing state criminal case. The court therefore dismisses those requests. See 28 U.S.C. § 1915A(b)(1).

B. Request for Money Damages

Tyson seeks $ 1,000,000 in punitive damages from each defendant as well as damages for harassment, mental anguish, anxiety and annoyance, nominal damages and exemplary damages. See Compl. at 6. The court declines to stay this action pending resolution of the state criminal proceeding because Tyson's claims for damages lack arguable legal merit.

1. Judge Clifford

Judges are immune from suit, not just from the ultimate assessment of damages. See Mireles v. Waco, 502 U.S. 9, 11

(1991). This immunity applies even to claims that a judge acted in bad faith, erroneously, maliciously or "in excess of his authority." Id. at 13. "[O]nce a court determines that an official was functioning in a core judicial or prosecutorial capacity, absolute immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." DiBlasio v. Novello, 344 F.3d 292, 297 (2d Cir. 2003) (citations and internal quotation marks omitted). There are two situations in which judicial immunity may be overcome. A judge is not immune from suit for actions taken outside his judicial capacity or for actions that are judicial in nature but taken in the absence of all jurisdiction. See Mireles, 502 U.S. at 11 (citations omitted).

Tyson alleges that, at times during the pendency of his state criminal case, Judge Clifford has instructed Attorney Doyle not to speak during a pretrial hearing, has either declined to rule on his motions or ruled against him on matters and motions, has disregarded his Acceptance/Negotiable Instrument/Grievance document, has misapplied statutes, and has refused to provide or disclose discovery/exculpatory material to him. See Compl. at 5, 17–18. Tyson complains that, at one point, Judge Clifford permitted him to proceed pro se, but would not rule on his motions. See id. at 22. Tyson suggests that more recently, Judge Clifford has attempted to appoint counsel for him, even though he did not ask for counsel. See id. Tyson claims that the attorney Judge Clifford attempted to appoint for him had threatened Tyson in the past. See id.

Appointing counsel for a party and determining whether to rule on motions, ruling on motions, including motions related to the disclosure of information or evidence, issuing orders regarding documents that have been filed in a case, directing speakers during proceedings, and interpreting and applying statutes constitute judicial acts within the jurisdiction of a state court judge. See Sadler v. Supreme Court of Connecticut, 167 F. App'x 257, 259 (2d Cir. 2006) ("Superior Court Judge White is immune from liability under § 1983 for damages and injunctive relief. Judge White performed a judicial action within his jurisdiction when he determined that Sadler's counsel ... should not be replaced.") (citation omitted); Ashmore v. Prus, No. 13-CV-2796 (JG), 2013 WL 3149458, at *3 (E.D.N.Y. June 19, 2013) ("Making evidentiary rulings is a paradigmatic judicial function."); Book v. Tobin, No. 3:04CV442 (JBA), 2005 WL 1981803, at *2 (D. Conn. Aug. 16, 2005) ("Quintessential judicial acts include presiding over trial proceedings, making evidentiary rulings, issuing jury instructions, and deciding motions, and remain protected

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 41 of 76

by judicial immunity even if the decisions are erroneous, untimely, and in excess of the judge's authority."). There are no allegations that Judge Clifford engaged in actions that were not judicial in nature or were taken in the absence of all jurisdiction. Thus, Judge Clifford is absolutely immune from suit to the extent that Tyson seeks money damages, and those claims against Judge Clifford are dismissed. See 28 U.S.C. § 1915(b)(2).

### 2. Attorney Doyle

**\*6** Tyson alleges that Attorney Doyle is the State's Attorney prosecuting his criminal case in the Connecticut Superior Court for the Judicial District of New Haven. See Compl. at 3, 5. Tyson asserts that Attorney Doyle did not speak during a pretrial hearing, did not respond to motions that he filed in the case, ignored his Acceptance/Negotiable Instrument/ Grievance document, misapplied statutes, and refused to disclose discovery/exculpatory material to him. See id. at 5 ¶ 2, 17–18. Tyson contends that, by failing to respond to his motions, Attorney Doyle has consented to the relief sought in those motions, including a motion to dismiss the charges against him. See id. at 20.

A prosecutor is protected by absolute immunity from a section 1983 action "for virtually all acts, regardless of motivation, associated with his function as an advocate." Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994). In Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a state prosecutor was absolutely immune from a civil suit to recover damages under section 1983 because the prosecutor's conduct "in initiating a prosecution and presenting the State's case" were "intimately associated with the judicial phase of the criminal process." Id. at 430–31. If a prosecutor acts in an investigative rather than an adversarial capacity, he or she is not entitled to absolute immunity. See Kalina v. Fletcher, 522 U.S. 118, 125–27 (1997) (holding that prosecutor was not protected by absolute immunity because she was acting as an investigator when she signed a sworn affidavit attesting to the facts supporting an arrest warrant).

Tyson's allegations against Attorney Doyle pertain to his role in prosecuting the criminal case against Tyson. Decisions involving whether to respond to a motion, to argue a matter in a pretrial hearing, or to disclose evidence to a defendant are all part of the preparation of a case for trial. See Shmueli

v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under § 1983.' ") (quoting Imbler, 424 U.S. at 410, 431); Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998) ("A prosecutor enjoys absolute immunity for acts taken in initiating a prosecution and in presenting the State's case, whether at a trial, a preliminary hearing, or a bail hearing.") (internal citations and quotation marks omitted); Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (explaining that prosecutors are "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged") (citation omitted). Thus, Attorney Doyle is immune from this suit.

### ORDERS

The court enters the following Orders:

**(1)** To the extent that Tyson challenges, based on a "sovereign citizen" theory, the jurisdiction of the State of Connecticut to prosecute him for a criminal offense, or the authority of any defendant to be involved in his prosecution, the court concludes that the claim lacks an arguable legal basis and is **DISMISSED**. See 28 U.S.C. § 1915A(b)(1). The claims against Judge Clifford and Attorney Doyle in their individual capacities for money damages are **DISMISSED** on the ground that they are entitled to absolute immunity. See 28 U.S.C. § 1915(b)(2). The court concludes that it must abstain from exercising jurisdiction over the requests for injunctive and declaratory relief seeking the court's intervention in Tyson's ongoing state criminal case and **DISMISSES** those requests. See 28 U.S.C. § 1915A(b)(1).

**\*7** **(2)** The Clerk is directed to enter judgment for the defendants and close this case. Any appeal from the Ruling dismissing the Complaint would not be taken in good faith. See 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

### All Citations

Not Reported in Fed. Supp., 2018 WL 6727538

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 42 of 76

## Footnotes

1    The State of Connecticut Department of Correction's website indicates, however, that Tyson is currently serving a nine-year sentence, imposed on January 25, 2017, for a violation of probation. Information regarding Tyson's current confinement may be found on the State of Connecticut Department of Correction's website under Inmate Search using his CT DOC Inmate Number 253494. See http://portal.ct.gov/DOC.

2    Information regarding this case may be found on the State of Connecticut's Judicial Branch website at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Pending Case – Search by Defendant – using plaintiff's last name and first initial of his first name - Tyson, D. (Last visited on December 19, 2018). The court notes that Tyson has filed another federal lawsuit against the victim of the alleged offenses for which he was arrested on March 10, 2016, as well as the police officers who arrested him. See Tyson v. Doe, et al., Case No. 3:17cv731(JCH). The court has stayed that action pending resolution of Tyson's state criminal case. See id. (Ruling on Mot. to Intervene or Stay Discovery, Doc. No. 133).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Steinkirchner v. Gordon, Not Reported in Fed. Supp. (2020)

2020 WL 549087
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

Anastasia STEINKIRCHNER, Plaintiff,

v.

Benjamin E. GORDON, Eric M. Hurwitz,
Stradley, Ronon, Stevens & Young, LLP
Navient Solutions, LLC, Defendants.

2:19-cv-01241
|
Signed 02/04/2020

**Attorneys and Law Firms**

Anastasia Steinkirchner, Pittsburgh, PA, pro se.

Benjamin E. Gordon, Stradley, Ronon, Stevens & Young, LLP, Philadelphia, PA, for Defendants.

## OPINION

Mark R. Hornak, Chief United States District Judge

**\*1** The Plaintiff, Anastasia Steinkirchner, proceeding *pro se*, filed a state court complaint against Navient Solutions, LLC ("Navient") in the Magisterial District Court for Allegheny County, Pennsylvania. (ECF No. 1-1, at 2.) Navient removed the action to this Court and then moved to dismiss. (ECF Nos. 1, 8.) The Plaintiff moved to amend her state court complaint, which the Court granted as a matter of course under Rule 15(a). (ECF Nos. 12, 15.) An Amended Complaint was filed, joining Navient's law firm and counsel of record as defendants. (ECF No. 16.) Navient and its law firm and counsel (collectively "the Defendants") moved to dismiss the Amended Complaint. (ECF No. 17.) The Plaintiff responded, the Defendants replied, and this matter became ripe for disposition. (ECF Nos. 20, 23.)

## I. STATEMENT OF THE FACTS

The Plaintiff's bare-bones state court complaint alleged violations of the Fair Debt Collections Practices Act ("FDCPA" or "the Act"), specifically 15 U.S.C. §§ 1692e, "False or misleading representations" and 1692f, "Unfair practices," and sought $12,000 in damages. (ECF No. 1-1, at 3.) The facts set forth in the state court complaint read in their entirety, "Terms of 'collection activities' listed in affidavit and subsequent letters was violated. Phone calls persisted and constitutes harrassment [sic]." (*Id.*) In her otherwise extensive Amended Complaint, the Plaintiff presented no additional facts. (ECF No. 16, at 1.) Instead, the Plaintiff stated that because she is no longer limited to a "maximum dollar amount" in state court, she now seeks "$28,181.85 (including filing fees)." (*Id.*) The Plaintiff arrived at that number by "seeking $1,000 in damages for each and every [FDCPA] violation"[1] plus the filing fees she paid. (*Id.*) To support those violations, the Plaintiff incorporated by reference records of phone calls and voicemails attached as Exhibit A to her Motion for Leave to Amend. (ECF No. 12, at 4–32.)

From those records, the Court discerned these asserted facts. The Plaintiff received missed calls, voicemails, or both from phone numbers she attributes to Navient. (*Id.*) The Plaintiff claims there were twenty-eight (28) offending calls. (ECF No. 16, at 1.) For its part, the Court counts twenty-six (26) separate calls. (ECF No. 12, at 4–32.) The discrepancy might be that these records consist of screenshots from a cell phone. Some screenshots of missed calls have a corresponding screenshot of a voicemail from the same phone number and left at nearly the same date and time. The Plaintiff does not clarify where a certain voicemail corresponds to a certain phone call. The Court also found one duplicate among the screenshots.[2] Finally, there is also very little in the record about the actual content of the voicemails.[3]

**\*2** The Plaintiff also incorporated by reference Exhibit B to her Motion for Leave to Amend, the state court complaint and the documents she originally included with that complaint. (*Id.* at 33–72.) The limited content of the state court complaint is discussed above. The attached documents include an "Affidavit of Legal Notice and Demand to Validate Debt Claim" ("the Affidavit"), a "Notary Certificate of Dishonor and Non-Response" ("the Certificate"), and a "Non-Negotiable Notice of Default Opportunity to Cure" ("the Notice").[4] (*Id.*)

These documents suggest that in March 2019 the Plaintiff wrote an Affidavit claiming to bind Navient to the Affidavit's terms if Navient failed to respond. (*Id.* at 37 ("SILENCE IS ACQUIESCENCE").) The Affidavit demanded that Navient "cease and desist" all collection activities "prior to validation of purported debt." (*Id.*) The Affidavit required Navient to produce a list of documents to verify this debt within thirty (30) days. (*Id.* at 38.)

Case 3:24-cv-00197-DNH-ML Document 7 Filed 06/11/24 Page 44 of 76

Steinkirchner v. Gordon, Not Reported in Fed. Supp. (2020)

In May 2019, the Plaintiff drafted, signed, and notarized the Certificate. (*Id.* at 40.) This document claimed to bind Navient legally for its failure to respond to the Plaintiff's Affidavit. (*Id.*) Further, it purportedly "dishonors" any claim of debt and associated costs or fees (*Id.*) The pagination suggests that attached to the Certificate was a letter. (*Id.* at 41.) The letter, dated the same day as the Certificate, gave Navient another ten days to provide documents and information proving the existence of a debt. (*Id.*) The letter also mentioned an account number. (*Id.*) Whether this number is an account the Plaintiff held with Navient or is unrelated, the record does not reveal.

The last document is the Notice. (*Id.* at 42.) The document is yet a third letter to Navient, dated around three weeks later, also in May 2019. (*Id.*) The letter included the same account number as the Certificate and recounted the previous correspondence the Plaintiff sent to Navient. (*Id.*) Noting Navient's failure to respond adequately (as defined by the Plaintiff), this letter purported to bind Navient to these terms:

1. That the debt did not exist in the first place; **OR**

2. It has already been paid in full; **AND**

3. That any damages I suffer, you will be held culpable;

4. That any negative remarks made, to a credit reference agency will be removed;

5. You will no longer pursue this matter any further. You have not proven any debt. If you sell the alleged liability, and/or appoint an agent to act on its/your behalf in this matter you will have broken our agreement and you agree to pay the following fee schedule $5,400 for dishonoring our binding agreement, plus $1000 per hour or part thereof for Authorized Representatives time nunc pro tunc, plus $1000 per recorded delivery or any other form of response nunc pro tunc. Also, **NO** further contact is now necessary, however, if you decide to contact me by phone or letter the fee is $100 per item payable in advance by cheque; if no payment is made in advance the fee will rise to $ 1000 per item and you will also be held culpable for any costs incurred while recovering the debt you owe.

(*Id.*) In essence, the Plaintiff has received multiple debt collection calls and she believes she successfully discharged her debt obligation by unilaterally sending these various letters and documents to Navient. The Plaintiff assumes that

her correspondence is legally binding on Navient and so those documents are also the source of her damages calculation. [5]

## II. JURISDICTION

**\*3** The Court has original jurisdiction under 28 U.S.C. § 1331 to decide this case. The Amended Complaint alleges claims under the FDCPA, and therefore the action arises under federal law. All other requirements for removal are satisfied. The Magisterial District Court for Allegheny County rests within the Western District of Pennsylvania. 28 U.S.C. § 1441. The Defendants filed their Notice of Removal within thirty (30) days of receipt. 28 U.S.C. § 1446(b).

## III. LEGAL STANDARDS

### A. Rule 12(b)(6) Motions

The Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). When determining whether dismissal is appropriate, the Court must: "(1) identify[ ] the elements of the claim, (2) review[ ] the complaint to strike conclusory allegations, and then (3) look[ ] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 (3d Cir. 2017). "A Rule 12(b)(6) motion should be granted when it appears to a certainty that no relief can be granted under any set of facts which could be proved." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 350 (3d Cir. 2012).

### B. *Pro Se* Pleadings

The Plaintiff is proceeding *pro se*. As a result, the Court holds the Amended Complaint to a less stringent standard and the Court must liberally construe the Plaintiff's pleading.

*Becker v. Comm'r*, 751 F.2d 146, 149 (3d Cir. 1984); *see also Carter v. Kane*, 717 F. App'x 105, 108 (3d Cir. 2017) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (holding the same post-*Twombly* and *Iqbal*). That said, even "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### IV. DISCUSSION

The Court accepts the well-pleaded facts (such as they are) as true and views the case in the light most favorable to the Plaintiff. The Court thus presumes that Navient placed all the calls and voicemails evidenced. It presumes that the Plaintiff sent the documents discussed above to Navient, and that Navient failed to respond. [6] Still, the Court will grant the Defendants' Motion to Dismiss.

### A. Claims Against Navient's Law Firm and Counsel of Record

First, the claims against Benjamin E. Gordon, Eric M. Hurwitz, and Stradley, Ronon, Stevens & Young, LLP ("SRSY") are dismissed. In reviewing the Amended Complaint and incorporated filings, the Court finds that the Plaintiff fails to state any claim as to these defendants. Certain filings by the Plaintiff, which the Court either denied or struck as irrelevant, show that the Plaintiff joined Mr. Gordon and Mr. Hurwitz as defendants based on her belief that these attorneys cannot practice law or represent Navient. [7] [8] (*See* ECF Nos. 11, 13, 18, 24.) The Plaintiff apparently joined SRSY based on the Plaintiff's belief that the law firm "is acting as a debt collector without a license, a bond and they are not registered under the [FDCPA]"—an assertion provided with no supporting facts. (ECF No. 11, at 1.) This allegation does not appear on the face of the complaint or in any incorporated documents. But even if it did, the allegation would be struck as a conclusory, legal statement. *Malleus*, 641 F.3d at 563. SRSY and Navient's counsel of record state that Navient retained them for legal representation. (ECF No. 17, at 1.) They were not involved in any underlying activity before their retention. (*Id.*) Given that none of the facts proffered by the Plaintiff assert FDCPA violations by SRSY or counsel of record, the claims against them are dismissed. [9] Leave to amend the complaint as to these defendants is also denied because they are not "debt collectors" or engaged in "debt collection activity," and thus not covered by the FDCPA as discussed below.

### B. FDCPA Claims Against Navient

**\*4** To prevail on a claim under the FDCPA, a plaintiff must satisfy four elements: "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). Viewed in the light most favorable to the Plaintiff, the Complaint adequately alleges the first and third elements, but she fails to plead the second and fourth elements.

#### 1. Element (1)—"Consumer"

First, the term "consumer" is defined under the Act as "*any* natural person obligated or allegedly obligated to pay *any* debt." 15 U.S.C. § 1692a(3) (emphasis added). Navient does not dispute that the Plaintiff is a natural person who is allegedly obligated to pay any debt.

#### 2. Element (3)—"Debt Collection"

The third element requires the Plaintiff to show that Navient's activity is "debt collection." The FDCPA regulates, but does not define, "debt collection." The Third Circuit has held the term encompasses "any conduct taken in connection with the collection of any debt" or "activity undertaken for the general purpose of inducing payment." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014). Communications need not include an explicit demand for payment to be "debt collection" activity. *Id.* Covered activity could also consist of "communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information." *Id.* at 245– 46. Thus, it could be said that most, if not all, calls from a debt collector would constitute "debt collection" activity. Debt collectors usually don't call just to say, "hi." Viewed in the light most favorable to the Plaintiff, the Court finds that there is a plausible showing that there is a debt in which Navient has some interest. The account number in the Plaintiff's letters to Navient, as well as by the calls and voicemails she received, show this to be the case. [10] Accepting the Plaintiff's claim that the calls and voicemails were from Navient, the Court finds

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 46 of 76

Steinkirchner v. Gordon, Not Reported in Fed. Supp. (2020)

that this element is also satisfactorily pleaded. Even so, the inquiry still hinges on Navient being a "debt collector" in the first place.

### 3. Element (2)—"Debt Collector"

In their Motion to Dismiss, the Defendants mainly challenge Navient's status as a "debt collector" as defined under the FDCPA. The Act generally defines a "debt collector" as "any person (1) who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts (the principal purpose definition), or (2) who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another (the regularly collects definition)." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (internal quotations omitted). The definition includes several exclusions, under which the Defendants say Navient falls. [11]

**\*5** The Defendants argue that the FDCPA's definition of "debt collector" applies *only* to those who collect debts on behalf of others. (ECF No. 17-1, at 5.) The definition thus excludes creditors collecting on a debt that the creditor originated. [12] (*Id.*) The Defendants also argue that the FDCPA excepts loan servicing companies, like Navient, and assignees of student loan debt "so long as that debt was not in default at the time the debt was obtained." (*Id.* at 6.) The Defendants cite several opinions holding that loan servicing companies are not "debt collectors" under the FDCPA. (*Id.* (citing cases from the 2d Cir., 5th Cir., 6th Cir., C.D. Cal., D. Haw., E.D. Mich., D.N.J., and E.D. Pa.).) Navient itself was a defendant in several of those cases. [13] Thus, the Defendants argue that the Amended Complaint should be dismissed because Navient cannot be a debt collector as a matter of law. They further argue that if the Court dismisses the Amended Complaint, it should also deny leave to amend because no amendment could cure this deficiency. (*Id.* at 7.)

The cases the Defendants cited from this Circuit suggest that a key factual element in determining whether a defendant is a covered "debt collector" or an uncovered loan servicer is whether the debt was in default when that defendant acquired it. In *Levy-Tatum v. Navient and Sallie Mae Bank*, the court focused on the debt collector exclusion under 15 U.S.C. § 1692a(6)(F)(iii). No. CV 15-3794, 2016 WL 75231, at \*6 (E.D. Pa. Jan. 7, 2016). That subparagraph excludes "any person collecting or attempting to collect any debt owed or

due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." *Id.* Because Navient had "maintained responsibility for servicing the loan from its inception" and before it defaulted, the complaint in *Levy-Tatum* failed to establish Navient was a debt collector. *Id.* at \*7. As a result, the exclusion in § 1692a(6)(F)(iii) applied and the claim was dismissed. *Id. See also Spyer v. Navient Sols., Inc.*, No. 15-3814, 2016 WL 1046789, at \*3 (D.N.J. Mar. 15, 2016) ("Navient is not a 'debt collector' under the FDCPA under these circumstances because it became the loan servicer ... while plaintiff's loan were not in default."); *Caione v. Navient Corp.*, No. CV 16-0806, 2016 WL 4432687 (D.N.J. Aug. 18, 2016) (holding the same).

After the Defendants here moved to dismiss, the Court specifically ordered the Plaintiff to address the arguments in the Defendants' Motion. (ECF No. 19.) The Court felt that this was necessary after the Plaintiff filed only a "Non-Negotiable Notice of Default Opportunity to Cure," which raised secondary and separate issues and was nonresponsive to the Motion to Dismiss. (*See* ECF No. 18.) Yet despite the Court's clear direction, the Plaintiff did not address the Defendants' arguments in her Response. (ECF No. 20.) Instead, the Plaintiff stated "[m]y original Complaint was clear in its statement and documentation as is the Amended Complaint." (*Id.* at 2.) She also rested on her previous arguments that Navient failed to validate the debt and that her correspondence to Navient had somehow discharged her debt. [14] (*Id.* at 1.) The Plaintiff therefore still offers no facts showing that Navient is a "debt collector," even after pleading, then amending, and then ignoring this Court's specific direction that she do so. Even accepting all factual allegations as true and viewing the Amended Complaint in the light most favorable to the Plaintiff, she still fails to state a claim. As a result, her Amended Complaint will be dismissed. The Court will not grant the Plaintiff leave to further amend, given that she had two (2) chances to do so, and ignored the Court's directions the second time around. The Court concludes therefore that she cannot do so, and any such effort would therefore be futile. *See Kline v. Elite Med. Labs., Inc.*, No. 1:19-CV-1043, 2019 WL 6828590, at \*6 (M.D. Pa. Dec. 13, 2019) ("Because Plaintiff has already amended his complaint ... and that amendment has failed to cure [the] defect, I find that granting further leave to amend would be both inequitable to require Defendant ... to seek dismissal a third time, and futile because even after being placed on notice of this issue Plaintiff has failed to allege enough facts").

Steinkirchner v. Gordon, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 47 of 76

*4. Element (4)—FDCPA Violation*

**\*6** The Plaintiff lists two causes of action against Navient—15 U.S.C. §§ 1692e and 1692f. The first statute prohibits a "debt collector" from using false, deceptive, or misleading representations or means" in collecting a debt. 15 U.S.C. § 1692e. It also enumerates sixteen (16) potential violations. *Id.* The latter statute prohibits unfair or unconscionable means to collect or attempt to collect a debt and lists eight (8) potential violations. *Id.* § 1692f. At most, the Plaintiff has pleaded that she received more than two dozen phone calls from Navient, which she regards as harassment. (ECF No. 12, at 34.) Even if the Plaintiff *had* shown Navient is a "debt collector," these facts would not state a claim. The Plaintiff sometimes received two or three calls per day. (*Id.* at 10, 21, 23.) But all the calls she documented took place over a span of five (5) months. (*Id.* at 4–32.); *see Despot v. Allied Interstate*, Aw., No. CV 15-15, 2016 WL 4593756, at \*6 (W.D. Pa. Sept. 2, 2016) ("Plaintiff has not pled any facts from which the Court can rightly infer that the phone calls were made with the intent to harass or annoy. The frequency of the calls does not suggest such behavior because the calls occurred over twenty days for an average frequency of less than one call per day.") The Plaintiff also received these calls

between 9:00a.m. and 6:30p.m. (ECF No. 12, at 4–32.); *see Lightfoot v. Healthcare Revenue Recovery Grp., LLC*, No. CIV 14-6791, 2015 WL 1103441, at \*2 (D.N.J. Mar. 11, 2015) ("there is ample case law requiring plaintiffs to plead that the challenged communication(s) occurred after 9 p.m. or before 8 a.m."). Thus, even accepting all the facts as true, the Plaintiff has not provided enough detail to support her claims. The Court would dismiss the Amended Complaint on this basis as well.

## V. CONCLUSION

For the reasons set out in this Opinion, the Defendants' Motion to Dismiss (ECF No. 17) will be GRANTED. The claims against Navient, Mr. Hurwitz, Mr. Gordon, and SRSY will be DISMISSED with prejudice. Leave to amend those claims is also denied as futile. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). The Plaintiff's Motion for Reconsideration (ECF No. 27) is also DENIED.

An appropriate Order will follow.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 549087

## Footnotes

1    She claims twenty-eight violations. (ECF No. 16, at 1.)

2    The Plaintiff received a July 3, 2019 call from a Springville, Utah phone number at 10:13a.m., which appears in two screenshots. (ECF No. 12, at 9, 28.)

3    Some voicemail screenshots consist of emails sent to the Plaintiff that include automated transcriptions of the voicemails' content. (*See* ECF No. 12, at 15–16, 19.) Unfortunately, the transcriptions are so poor that they shed little light on the actual content. At most, one caller may have said she was calling the Plaintiff from "Navient," but it was transcribed as "Navia." (*Id.* at 19.)

4    Exhibit B also includes the same screenshots discussed above and a photocopy of a certified mail receipt. (*Id.* at 43–72.) Much of Exhibit B consists of high-sounding but completely irrelevant content regarding Federal Reserve Notes, notice to agents and principals, and references to the "Republic of Pennsylvania." (*Id.* at 37–39.)

5    Upon reviewing these documents, it is clear what the Plaintiff meant in her state court complaint when she said, "[t]erms of 'collection activities' listed in affidavit and subsequent letters was violated." The Plaintiff believes that the terms in the documents she sent to Navient are somehow binding on Navient by dint of

**Steinkirchner v. Gordon, Not Reported in Fed. Supp. (2020)**

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 48 of 76

its nonresponse to them. Those terms were then supposedly "violated" when Navient continued to call the Plaintiff. As a result, the Plaintiff says that Navient must pay her $1,000 per call. (ECF No. 12, at 42.) That "fee" multiplied by the alleged number of calls (28) equals the damages the Plaintiff seeks, less the filing fee. Presumably, Navient never "paid for" those calls. Given the claims asserted, these documents are not relevant to whether the Plaintiff sufficiently alleges a violation of the FDCPA. While the Court is not in the business of issuing general advisory opinions, it can say with confidence that the Plaintiff's one-sided effort to discharge her debts does not create a legal or factual basis for the claims she struggles to assert.

6       Navient provided documentation purportedly showing that it did respond to the Plaintiff's request for verification of the debt, even though it argues it did not have to. (ECF Nos. 23, at 4–5; 23-1; 23-2; 23-3.)

7       Both lawyers for Navient are admitted to practice in the Commonwealth of Pennsylvania. Mr. Hurwitz is admitted to practice in this Court. The Court also admitted Mr. Gordon to appear and practice in this Court as counsel *pro hac vice* for Navient. (ECF Nos. 2, 3.)

8       The Plaintiff advanced several unconvincing legal theories in her Motion to Strike, which the Court denied. (ECF No. 11.) For instance, the Plaintiff claimed that counsel could not practice law because the practice of law "CAN NOT be licensed by any state/State," rather the "practice of Law is AN OCCUPATION OF COMMON RIGHT!" (*Id.* at 1.) Yet despite her belief about the common right to practice law, she demands evidence of the attorneys' licenses to practice law, lest they come before the court "in violation of the 'Clean Hands Doctrine.' " (*Id.*) The Plaintiff asserted several dubious legal theories throughout the stricken documents as well. (ECF Nos. 13, 18, 24.) For example, she repeatedly claimed that counsel of record must provide their "Registration Statements" under the Foreign Agents Registration Act of 1938 ("FARA"). (*See, e.g.*, ECF No. 24, at 1.) FARA, of course, applies to agents of a foreign (as in "outside the United States") principal and aims to prevent clandestine dissemination of foreign political propaganda within the United States. *See* 22 U.S.C. § 611 *et seq.*; *Viereck v. United States*, 318 U.S. 236, 241 (1943). Having stricken or denied these filings, the Court does not address them point-by-point. Instead, the Court refers to them to reflect what the Court believes was the Plaintiff's reasoning for joining these parties.

9       The Court also ordered stricken the Plaintiff's repetitive further filings assailing the "foreign registration" (or lack thereof) of these lawyers, ECF Nos. 13, 18, 24, 25, 26, and for the same reasons will deny the apparent Motion for Reconsideration, ECF No. 27.

10      The exhibits attached to the Defendants' Reply Brief—the promissory notes for the Plaintiff's federal student loans and her detailed payment history—also confirm this. (ECF Nos. 23-1, 23-2, 23-3.)

11      The most pertinent exclusion appears to be: "the term [debt collector] does not include ... any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

12      Navient does not claim to be a creditor, but this argument is a bit more nuanced in this Circuit. *See Barbato, 916 F.3d at 266* (holding a "creditor" could also be a "debt collector" under the FDCPA).

13      *Caione v. Navient Corp.*, No. 16-cv-806, 2016 WL 4432687 (D.N.J. Aug. 18, 2016); *Downridge v. Navient*, No. 16-cv-10327, 2016 WL 1594427 (E.D. Mich. Apr. 21, 2016); *Spyer v. Navient*, No. 15-cv-3814, 2016 WL 1046789 (D.N.J. Mar. 15, 2016); *Haysbert v. Navient Sols., Inc.*, No. 15-4144, 2016 WL 890297 (C.D. Cal. Mar. 8, 2016); *Levy-Tatum v. Navient*, No. 15-cv-3794, 2016 WL 75231 (E.D. Pa. Jan. 7, 2016).

14      For these reasons, the Defendants ask this Court to consider the arguments unopposed and to grant their Motion. (ECF No. 23, at 2.) The Court declines to do so on this basis. *See Jones v. Unemployment Comp.*

Steinkirchner v. Gordon, Not Reported in Fed. Supp. (2020)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 49 of 76

*Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010) (expressing disfavor for a 12(b)(6) dismissal because an argument is unopposed).

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Stoute v. Navient, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 50 of 76

2019 WL 13234780
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

Stephen STOUTE, Plaintiff,

v.

NAVIENT, Defendant.

Civil Action No. 19-11362-IT
|
Signed July 2, 2019

**Attorneys and Law Firms**

Stephen Stoute, Chelsea, MA, Pro Se.

### MEMORANDUM AND ORDER

TALWANI, District Judge

**\*1** For the reasons set forth below, the court allows Plaintiff's Application to Proceed Without Prepayment of Fees [#2] but finds that Plaintiff's Complaint [#1] fails to state a claim upon which relief may be granted. If Plaintiff wishes to proceed with this action, he must file an amended complaint that sets forth a plausible claim upon which relief may be granted.

### I. Background

On June 19, 2019, Stephen Stoute ("Stoute"), a resident of Chelsea, Massachusetts, filed a *pro se* Complaint [#1] accompanied by an Application to Proceed Without Prepayment of Fees [#2]. The sole defendant named in the complaint is Navient, identified as a Pennsylvania Corporation. Compl. Stoute alleges that on May 2, 2019, Navient sought to collect payments of a student loan. *Id.* at ¶ III (statement of claim), p. 5. He contends that Navient failed to respond to his May 22, 2019, letter and Notice of Default. *Id.* Stoute states that he "suffered in housing for several years [because] the alleged debt [was placed] on [Stoute's] credit report." *Id.* Stoute asserts that as a result of Navient's actions, he "was embarrassed to show [his] credit report or have a credit check performed." *Id.* As best as can be gleaned from the Complaint and attached exhibits, Stoute contends that due to Navient's failure to respond to his correspondence, and pursuant to UCC 3-505 and 1-202, Navient may not pursue collection on the alleged debt. For relief, Stoute seeks (1) "actual damages" of $48,245 plus interest on the alleged

debt; (2) removal of the alleged debt from Stoute's credit score, including any late payments; (3) $80,000 for emotional distress; and (4) $350,000 punitive damages. Compl., at ¶ IV (relief).

### II. Motion for Leave to Proceed In Forma Pauperis

After review of Stoute's motion for leave to proceed *in forma pauperis*, the court concludes that Stoute is without assets to pay the filing fee and ALLOWS the motion.

### III. Screening of the Complaint

When a plaintiff seeks to file a complaint without prepayment of the filing fee, summonses do not issue until the Court reviews the complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915. Section 1915 authorizes federal courts to dismiss a complaint *sua sponte* if the claims therein lack an arguable basis in law or in fact, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2).

When examining the sufficiency of the pleadings, the court considers whether the plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"In evaluating whether a complaint states a plausible claim, [the court performs a] 'two-step analysis.'" *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011).

**\*2** In conducting this review, the court liberally construes Stoute's complaint because Stoute is proceeding *pro se*. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Stoute v. Navient, Not Reported in Fed. Supp. (2019)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 51 of 76

**IV. Discussion**

Here, the complaint fails to allege any facts that could support a claim against the defendant. Stoute does not deny that he incurred a debt. Rather, he contends that the debt has been cancelled based upon Navient's failure to respond to his correspondence. Stoute's reliance on two provisions [1] of the Uniform Commercial Code do not support any claim for relief. In light of the foregoing, this action will be dismissed in 21 days unless Stoute files an amended complaint which cures the pleading deficiencies and sets forth a plausible claim upon which relief may be granted.

**V. Order**

Based upon the foregoing, it is it is hereby ORDERED that

1. The Application to Proceed Without Prepayment of Fees [#2] is granted.

2. The Complaint [1] is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2). If Plaintiff wishes to proceed in this matter, he must file an amended complaint curing the pleading deficiencies and setting forth a plausible claim upon which relief may be granted. Failure to comply with this directive within twenty-one (21) days of the date of this Memorandum and Order will result in dismissal of this action.

**So ordered.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 13234780

**Footnotes**

1    Section 1-202 concerns authentication of commercial paper and related documents. Section 3-505 provides that certain evidence concerning dishonor of a negotiable instrument is admissible and creates a presumption of dishonor.

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 5657110
Only the Westlaw citation is currently available.
United States District Court,
M.D. Alabama,
Northern Division.

Wayne McKAY and Shondra McKay, Plaintiffs,

v.

U.S. BANK, National Associaton, as
trustee for the Certificate Holders of the
LXS 2007–15N Trust Fund, Defendant.

No. 2:14–cv–872–TFM.
|
Signed Sept. 24, 2015.

**Attorneys and Law Firms**

John Scott Hooper, Hooper Law Firm, Montgomery, AL, for Plaintiffs.

Gregory Carl Cook, Balch & Bingham LLP, Birmingham, AL, John W. Naramore, Griffin Lane Knight, Balch & Bingham LLP, Montgomery, AL, for Defendant.

***MEMORANDUM OPINION AND ORDER***

TERRY F. MOORER, United States Magistrate Judge.

**I.** *Introduction*

**\*1** Plaintiffs filed this declaratory judgment action against Defendant U.S. Bank, National Association, as trustee for the Certificate Holders of the LXZ 2007–15N Trust Fund ("U.S.Bank") asking this Court to declare "that Defendant is not a party in interest as against Plaintiffs and or Plaintiff's [sic] real property." and seeking "a declaration to quiet title in favor of Plaintiffs and against Defendants [sic]." (Doc. 1 p. 2). The defendant filed a *Motion to Dismiss and Brief in Support* (Docs. 12 and 13) to which it attached as exhibits the following: a copy of the Plaintiffs' Mortgage on the property identified as 2722 Albemarle Road Montgomery, Alabama 36107 (Doc. 13–1) [1]; a copy of the Adjustable Rate Note for the property identified above (Doc. 13–2); and a copy of the Assignment of Mortgage from MERS as nominee for Bayrock Mortgage Corporation to Defendant U.S Bank. (Doc. 13–3). The plaintiffs filed a *Response to the Motion to Dismiss* (Doc. 17) to which they attached an affidavit from

Rosemary A. Parks, "the substitute of the holder of the power of Attorney" for Plaintiffs. (Doc. 17–1).

**II.** *Standard of Review*

When considering the appropriate standard to apply on a motion to dismiss where parties have filed documents outside the complaint with the Court, the Eleventh Circuit has held that

> "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged."

*D.L. Day, v. Taylor,* 400 F.3d 1272, 1276 (11th Cir.2005) citing *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir.2002). Further, "[a] Rule 12(b)(6) motion tests the legal sufficiency of the complaint....[I]n order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.' " *Coggins v. Abbett,* 2008 WL 2476759 \*4 citing *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929) (2007).

The standard for a motion to dismiss under Rule 12(b)(6) was explained in *Twombly* and refined in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) as follows:

> Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era,

but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

**\*2** *Iqbal,* 129 S.Ct. at 1949–50 (citations and internal edits omitted).

The *Twombly–Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.,* at 195; *Mamani v. Berzain,* 2011 U.S.App. Lexis 17999, at \*12, 2011 WL 3795468 (11th Cir. Aug. 29, 2011) ("Following the Supreme Court's approach in *Iqbal,* we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly–Iqbal* analysis requires the Court to assume the veracity of well-pleaded factual allegations, and then to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.' " *Mack v. City of High Springs,* 486 Fed. App'x 3, 6 (11th Cir.2012) (quotation omitted.) "To survive a motion to dismiss, a complaint need not contain 'detailed factual allegations' but instead the complaint must contain 'only enough facts to state a claim to relief that is plausible on its face.' " *Maddox v. Auburn Univ. Fed. Credit Union,* 2010 U.S. Dist. Lexis 127043 at \*4. Establishing facial plausibility, however, requires more than stating facts that establish mere possibility. *Mamani,,* 2011 U.S.App. Lexis 17999, at \*22–\*23, 2011 WL 3795468 ("The possibility that -if even a possibility has been alleged effectively-these defendants acted unlawfully is not enough for a plausible claim."). Plaintiff is required to "allege more by way of factual content to nudge [her] claim ... across the line from conceivable to plausible." *Iqbal,* 129 S.Ct. at 1952 (internal editing and citation omitted.)

**III.** *Discussion*

The claims in this case arise from U.S. Bank's status as mortgagee of Plaintiffs' Mortgage. (Doc. 1 para. 2). On December 12, 2006, Plaintiffs executed a Mortgage in favor of MERS, as nominee for Bayrock Mortgage Corporation ("Bayrock") to secure a Note evidencing an $82,400.00 home loan from Bayrock to Plaintiffs. The defendant has filed with the Court a copy of the Mortgage, the Note and the Assignment at issue in this case (Docs.13–1, 13–2, 13–3). The Plaintiffs have not objected to the authenticity of these documents; nor does the Court have any reason to doubt that these documents are anything other than what they appear to be on their face. Thus, the authenticity of these documents is "undisputed". Furthermore, these documents form the basis of Plaintiffs' claim and as such are "central" to Plaintiffs' claim. *D.L. Day,* 400 F.3d at 1276. Accordingly, the Court concludes that these documents are properly before the Court for its consideration on the Motion to Dismiss. *Id.*

Plaintiffs allegedly mailed U.S. Bank a "notarial presentment" on July 17, 2014, which U.S. Bank allegedly received on July 21, 2014. (Doc. 1 para. 4). This "notarial presentment" purportedly asserted that U.S. Bank was not the party of interest to enforce Plaintiff's Mortgage, and apparently requested that U.S. Bank produce the original Note and Mortgage. (*Id.* at para. 5). Plaintiffs also allegedly mailed U.S. Bank a "notarial notice of Dishonor" on August 4, 2014, which was allegedly received by U.S. Bank on August 11, 2014. (*Id.* at para. 7). Plaintiffs alleged that U.S. Bank has not responded to either the "notarial presentment" or the "notarial notice of dishonor." (*Id.* paras. 6, 8). Plaintiffs claim that U.S. Bank is not in possession of the original Note or original Mortgage—notwithstanding that U.S. Bank has attached copies of the same to this motion. (*Id.* para. 9); *see* (Doc. 13–1 and 13–2). Plaintiffs' Note and Mortgage are now part of a securitized pool, of which U.S. Bank is Trustee. (Doc. 1, paras.2, 10); *see* (Doc. 13–3). Plaintiffs now seek a declaratory judgment (1) against U.S. Bank declaring that U.S. Bank is not a party in interest as to Plaintiffs or Plaintiffs' property, and (2) to quiet title in favor of Plaintiffs and against U.S. Bank. (*Id.* at p. 2).

**\*3** It is undisputed that Plaintiffs have not made a mortgage payment since June 2013, yet are still living in their house. Defendant argues that the Plaintiffs' Complaint is due to be dismissed for three reasons. First, Plaintiffs incorrectly argue that the principles of presentment and dishonor of negotiable instruments apply to this case. Second, Plaintiffs incorrectly argue that U.S. Bank is not a party in interest to this case. Third, Plaintiffs fail to adequately plead a

quiet title claim. The Court will address each of these arguments below. The Court notes that Plaintiffs' response to Defendant's Motion to Dismiss is simply a restatement, almost verbatim, of the claims in their complaint and offers no factual or legal argument to rebut those arguments presented by Defendant. (Doc. 17). The Court will address each of Defendants arguments in turn below.

**(1) *Ala.Code* §§ 7–3–501 to 503 do not apply to this case.**

Plaintiffs claim that U.S. Bank has "admitted that it is not the party to enforce the note and mortgage on Plaintiffs' property and [U.S. Bank] is not in possession of the original note." (Doc. 1, paras 4–8). This claim is not supported by any relevant law or fact. First, Plaintiffs claim that they mailed U.S. Bank a "notarial presentment alleging that [U.S. Bank] was not the party of interest to enforce the mortgage and that for [U.S. Bank] to produce the original mortgage and note under Code of Alabama 7–3–501." (Doc. 1, para.4). This section defines "presentment" as follows:

> "*a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to* the drawee *or party obliged to pay the instrument,* or in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.*"

*Ala.Code* 7–3–501 (emphasis added). By the clear terms of the statute, presentment is a power to be exercised "by or on behalf of a person entitled to enforce the instrument," and against "a party obliged to pay the instrument". *Id.* Plaintiffs appear to claim that they are entitled to make a demand for presentment, and that they are entitled to demand payment from U.S. Bank. This is a backwards reading and interpretation of the statute. As the parties indebted under their home loan and obliged to pay the Note, Plaintiffs are the parties to whom presentment could be made. There is no allegation that U.S. Bank, as the party entitled to enforce the Note, has made any demand for presentment on Plaintiffs. Thus the doctrine of presentment is inapplicable to the facts of this case and is not a basis for this Court to conclude that U.S. Bank has "admitted" anything related to Plaintiffs' Mortgage as Plaintiffs claim. (Doc. 1, paras 4–8).

Similarly, Plaintiffs' contentions related to dishonor are inapplicable and without merit. (Doc. 1 paras. 6–8). *Ala.Code* 7–3–502(a)(1)–(3) provides generally that a note is dishonored if the note is not paid on the day of presentment (if necessary) or on the day it becomes payable. For the concept of dishonor to apply, the party obligated to pay it, must fail to pay it. Thus, Plaintiffs, as the parties obligated to pay the amount of the Note, are the only parties who could dishonor the Note. Thus the doctrine of dishonor is inapplicable [2] to the facts of this case and is not a basis for this Court to conclude that U.S. Bank has "admitted" anything related to Plaintiffs' Mortgage as Plaintiffs claim. (Doc. 1, paras 4–8).

**(2) 12 U.S.C. § 2605(k)(1)(d) does not apply.**

**\*4** Plaintiffs cite 12 U.S.C. § 2605(k)(1)(d) for the proposition that U.S. Bank had "ten (10) business days to rebut the Notarial Presentment of Plaintiffs or the same is deemed admitted as presented. "(Doc. 1, para.5). This Section states as follows:

(k) Servicer prohibitions

(1) In general

  A servicer of a federally related mortgage shall not—

(D) fail to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan.

By its clear terms, this statute applies to a "servicer of a federally related mortgage". Plaintiffs have not alleged that U.S. Bank is the servicer of their Mortgage; nor do Plaintiffs allege in their Complaint that they ever actually requested identity and contact information about the owner or assignee of the loan. Rather they assert that their "Notarial Presentment alleg[ed] that [U.S. Bank] was not the party of interest to enforce the mortgage and that for [U.S. Bank] to produce the original mortgage or note." (Doc. 1, para.4). The information sought by Plaintiff is clearly not contemplated by this Code section. Thus, this Code section is inapplicable to the facts of this case and is not a basis for this Court to conclude that U.S. Bank has "admitted" anything related to Plaintiffs' Mortgage as Plaintiffs claim. (Doc. 1, paras.4–8).

**(3) U.S. Bank is a party in interest as to Plaintiffs' Mortgage**

Plaintiffs seek declaratory relief that U.S. Bank "is not a party in interest as against Plaintiffs and or Plaintiff's [sic] real property." (Doc. 1, p. 2). Plaintiffs first theory to support this argument is that U.S. Bank failed to comply with the statutory requirements relating to presentment, dishonor, and information requests. For the reasons stated in sections (1) and (2) above, the Court concludes this theory has no merit.

Plaintiffs' second theory to support their request for declaratory relief is based partly upon their claim that U.S. Bank "must possess both [the Note and Mortgage] to be the party in interest to enforce the mortgage." (Doc. 1 para. 9). The law is clear; this "split the note" theory has been consistently rejected by Alabama courts. *See, e.g., Coleman v. BAC Servicing,* 104 So.3d 195, 205 (Ala.Civ.App.2012) (holding that "Alabama law specifically contemplates that there can be a separation" of the note and mortgage); *See, also, Orton v. Matthews,* 2013 WL 5890167 * 4 (N.D. Ala. Nov 1, 2013) (granting motion to dismiss on basis that the " 'split the note' theory has been roundly rejected by Alabama courts"). Thus, the Court concludes that this theory does not support the conclusion that U.S. Bank is not a party in interest to Plaintiffs' mortgage, as Plaintiffs claim.

Further, the Court recognizes Plaintiffs acknowledge that U.S. Bank is Trustee of the Trust (Doc. 1 para. 2). Under the law, if a trustee possesses "customary powers to hold, manage, and dispose of assets," then that trustee is a real party in interest. *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 464, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Section Q of the Mortgage provides as follows:

> **\*5**  "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property ... [or] releasing and cancelling this Security Instrument."

(Doc. 13–1 p. 4). Additionally, the Mortgage provides that

> "[t[he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to [Plaintiffs]."

(Doc. 13–1 p. 16 para. 20). Also, the recorded U.S. Bank assignment provides that the Mortgage was assigned to U.S. Bank, as trustee. (Doc. 13–3). Thus, the facts are undisputed that U.S. Bank is now the mortgagee of Plaintiffs' Mortgage, and Plaintiffs agreed to terms in the Mortgage establishing that the mortgagee has the power to exercise enforcement

rights granted in the Mortgage. Thus, the Court concludes that Plaintiffs claim that U.S. Bank is not a real party in interest fails; and thus no declaratory relief is due on this claim.

**(4) Plaintiffs' Quiet Title claim is due to be dismissed.**
Plaintiffs also seek "a declaration to quiet title in favor of Plaintiffs and against Defendants." (Doc. 1 p. 2). An action to quiet title is the appropriate test to determine which among the parties claiming right of title and possession holds superior title. *Gardner v. Key,* 594 So.2d 43, 44 (Ala.1991). Plaintiffs quiet title claim is based, in whole or in part, on the arguments made pursuant to Alabama and federal law as discussed above in sections (1), (2) and (3). To the extent that these arguments serve as the basis for Plaintiffs' quiet title claim, the Court concludes that the quiet title claim is due to be dismissed.

Furthermore, the Court concludes that Plaintiffs' quiet title claim should be dismissed because it does not meet the required pleading standards for a quiet title action. Under Alabama law, any person "in peaceable possession of lands [and] ... claiming to own the same, ... [whose] title thereto, or any party thereof, is ... disputed ..., may commence an action to settle the title to such land and to clear up all doubts or disputes concerning the same." *Ala.Code* § 6–6–540. A plaintiff establishes a prima facie case to quiet title when "it is shown that [the plaintiff] is in peaceable possession of the land, either actual or constructive, at the time of the filing of the bill and that there was no suit pending to test the validity of the title. *Woodland Grove Baptist Church, v. Woodland Grove Cmty. Cemetery Ass'n, Inc.,* 947 So.2d 1031, 1036 (Ala.2006) (citations omitted.)

Indeed, in order to meet the "plausibility" pleading standard articulated by *Twombly* and *Iqbal,* a plaintiff's complaint must include enough factual allegations to lift the stated claim out of the realm of mere speculation. *Twombly,* 550 U.S. at 555. Here, Plaintiffs fail to identify or attempt to connect factual allegations to any of the elements of a quiet title cause of action. Indeed, the only part of the Complaint that remotely relates to such a claim is the factual allegation that Plaintiff's "own a home". (Doc. 1 para. 1). Thus, the Court concludes that under the "plausibility" standard of *Twombly* and *Iqbal,* Plaintiffs fail to adequately plead a cause of action to quiet title.

**IV. *Conclusion***
**\*6**  Accordingly, the Court concludes that Defendant U.S. Bank's *Motion to Dismiss the Complaint* (Doc. 12) is

GRANTED and that this case is due to be dismissed with prejudice. A separate Order will be issued.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5657110

## Footnotes

1    The Lender identified in the Mortgage is Bayrock Mortgage Corporation for whom Mortgage Electronic Registration Systems, Inc. ("MERS") acts as nominee. (Doc. 13–1 pp. 2–3).

2    Further, *Ala.Code* 7–3–503 which relates to notice of dishonor, is similarly inapplicable to this case.

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

## Attorneys and Law Firms

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

## DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,
1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambery v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 59 of 76

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 60 of 76

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

 **\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

 **\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 62 of 76

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

End of Document                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 63 of 76

2021 WL 3518327
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rikisha S. SMITH, Plaintiff,
v.
Joseph JACKSON, Defendant.

5:21-CV-0005 (MAD/ML)
|
Signed 01/11/2021

**Attorneys and Law Firms**

RIKISHA S. SMITH, Plaintiff, Pro Se, 223 Otisco Street, Syracuse, New York 13204

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 2) filed by Rikisha S. Smith ("Plaintiff") to the Court for review. For the reasons discussed below, I deny as moot Plaintiff's *in forma pauperis* application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend. Further, in light of Plaintiff's abuse of the judicial process in this District, I recommend the issuance of an anti-injunction order preventing her from filing any further actions in this District without prior permission from the Chief District Judge.

**I. BACKGROUND**

On October 24, 2018, Plaintiff commenced a *pro se* action in the Northern District of New York, No. 5:18-CV-1252 (LEK/ATB) ("*Smith I*") along with five minor children S.L.H., A.I.L., S.J.H., A.P.H., P.I.L., and the organization referred to as the Children's Rainbow No #'s, against defendants President George W. Bush, President Obama, Dr. Scott, Dr. Jackson, Donald Trump, and Supreme Courts. (*Smith I*, Dkt. No. 1.)

On November 1, 2018, U.S. Magistrate Judge Andrew T. Baxter granted Plaintiff's IFP application but recommended dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). (*Smith I*, Dkt. No. 4.) Judge Baxter

found Plaintiff's complaint in *Smith I* to be frivolous and incomprehensible. (*Id.* at 4.)

On November 28, 2018, Plaintiff filed an amended complaint in *Smith I*. (*Smith I*, Dkt. No. 6.)

On December 3, 2018, Senior United States District Judge Lawrence E. Kahn adopted Judge Baxter's report and recommendation in its entirety. (*Smith I*, Dkt. No. 8.) Judge Kahn dismissed Plaintiff's complaint with prejudice against Plaintiff and the Children Rainbow #s and without prejudice against S.L.H., A.I.L., S.J.H., A.P.H., and P.I.L. (*Id.*) Judgment was entered on December 3, 2018. (*Smith I*, Dkt. No. 9.)

On December 4, 2018, Plaintiff filed a notice of appeal in *Smith I*. (*Smith I*, Dkt. No. 12.)

On December 4, 2018, Judge Kahn issued a text order stating, *inter alia*, "[t]he Amended Complaint and other recent filings are collections of documents, submitted without explanation, that do not assert any new claims for relief. As Smith's claims were dismissed with prejudice, and the children here are not represented by counsel, the Court will not consider the Amended Complaint, nor any further filings by Smith in this matter." (*Smith I*, Dkt. No. 14.)

On December 27, 2018, Plaintiff filed a motion to reopen the case. (*Smith I*, Dkt. No. 16.) On January 2, 2019, Judge Kahn issued a text order denying Plaintiff's motion because "[t]he Court previously advised Smith that her claims were dismissed with prejudice and that it would not consider any further submissions from her in this matter" and "the Motion to Reopen articulates no grounds on which reopening would be appropriate." (*Smith I*, Dkt. No. 17.)

On June 12, 2019, the Second Circuit dismissed Plaintiff's appeal "because it lacks an arguable basis either in law or in fact." (*Smith I*, Dkt. No. 20.)

**\*2** On July 6, 2020, Plaintiff commenced a *pro se* action in the Northern District of New York, No. 5:20-CV-0748 (TJM/ML) ("*Smith II*"), against defendants Rikita Smith, President Nixon, Torron J. Baxter, Nikki Piddilla, Marina Bewer, Strauther L. Hosea, Strauthmeek J. Hosea, Jason S. Lebron, Sadi, Laverne Scott, Dorthy Sullivan, and Tonya Crawford. (*Smith II*, Dkt. No. 1.)

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 64 of 76

On August 21, 2020, the undersigned issued an Order and Report-Recommendation that, *inter alia*, denied as moot Plaintiff's *in forma pauperis* application and recommended that Plaintiff's Complaint be dismissed in its entirety with leave to amend, finding that it was frivolous. (*Smith II,* Dkt. No. 10.)

On August 27, 2020, Plaintiff filed an Amended Complaint (*Smith II,* Dkt. No. 11) and objections to the Order and Report-Recommendation dated August 21, 2020 (*Smith II,* Dkt. No. 14).

On September 2, 2020, Senior United States District Judge Thomas J. McAvoy issued an Order that, *inter alia*, (1) overruled Plaintiff's objection, (2) accepted and adopted the Order and Report-Recommendation of August 21, 2020, and (3) referred Plaintiff's Amended Complaint to the undersigned for review. (*Smith II,* Dkt. No. 17.)

On October 9, 2020, the undersigned issued an Order and Report-Recommendation that, *inter alia*, recommended dismissal of Plaintiff's amended complaint without leave to amend, finding that it was frivolous. (*Smith II,* Dkt. No. 26.) That Order and Report-Recommendation is currently pending before Judge McAvoy. (*See generally Smith II* docket sheet.)

On October 6, 2020, Plaintiff commenced a *pro se* action in the Northern District of New York, No. 5:20-CV-1225 (MAD/ML) ("*Smith III*"), against defendant President Bill Clinton. (*Smith III,* Dkt. No. 1.)

On October 13, 2020, the undersigned issued an Order and Report-Recommendation that, *inter alia*, denied as moot Plaintiff's *in forma pauperis* application and recommended that Plaintiff's Complaint be dismissed in its entirety with leave to amend, finding that it was frivolous. (*Smith III,* Dkt. No. 9.) That Order and Report-Recommendation is currently pending before United States District Judge Mae A. D'Agostino. (*See generally Smith III* docket sheet.)

On January 5, 2021, Plaintiff commenced this *pro se* action ("*Smith IV*") by the filing of her Complaint against Joseph Jackson, who is alleged to be the "Dad of Jacksons." [1] (Dkt. No. 1.)

**\*3** The Complaint consists of five different form complaints, which purport to assert actions arising under (1) 42 U.S.C. § 1983; (2) Title VII of the Civil Rights Act, as amended; (3) for employment discrimination based on age; (4) the Americans

with Disabilities Act; and (5) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971). (*See generally* Dkt. No. 1.) The Complaint is a series of incomplete sentences that are largely indecipherable and devoid of factual assertions. (*Id.*)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff has paid the statutory filing fee (Dkt. No. 1, Attach. 1 at 1), the motion to proceed *in forma pauperis* is denied as moot. *Ping Lin v. Holder,* 387 F. App'x 93, 97 (2d Cir. 2010) ("The pending motion to proceed *in forma pauperis* is DENIED as moot because the filing fee has already been paid.").

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party or parties have been served and have had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed, notwithstanding payment of the filing fee. *Fitzgerald v. First East Seventh Street Tenants Corp.,* 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.,* 11-CV-0335, 2016 WL 865296, at \*1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous). In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327; *Harkins v. Eldridge,* 505 F.2d 802, 804 (8th Cir. 1974).

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v.*

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 65 of 76

*Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff's Complaint is comprised of twenty-one pages of incoherent text written on every form-complaint from the Clerk's office. (*See generally*, Dkt. No. 1.) By way of example, in the facts portion of Plaintiff's Complaint that was filed on the Civil Rights Complaint pursuant to 42 U.S.C. § 1983 form, Plaintiff alleges as follows:

> STory about Joseph Jackson 7-26
> 6-27
> and Katherine Jackson 5-4
> Baker St Syracuse N.Y. Gilbert Baker
> 6-2
> Elizabeth St Syracuse N.Y. Queen
> Elizabeth
> 4-21 Human cloning AS863 Andrew
> Jackson
> 20 bill AS863 Patriots act unsolved
> homiside
> cases Syracuse N.Y. (315) Purge
> Masters 11-23 11-26 11-28
> Purge Day 321 Talisha Unique Smith
> Uncle Charles Smith Father and
> daughter 421 Montgomery St
> **\*4** Hason Myrick 123 snap benefits
> walefare building
> House congress
> House of representatives

(Dkt. No. 1 at 2-3 [errors in original].) In addition, in the causes of action portion of Plaintiff's Complaint that was filed on the Civil Rights Complaint pursuant to 42 U.S.C. § 1983 form, Plaintiff alleges as follows:

> FIRST CAUSE OF ACTION
> Jason S Lebron date of birth 1-5 president
> Calvin Coolidge grandma name Mrs Rubby
> Calvin Mcalpine grandma name Mrs. Ruby
> Jason S Lebron aunt name Brinda Godwin
> Calvin Mcalpine grandma name Brinda Bush
>
> SECOND CAUSE OF ACTION
> Calneisha Mcalpine dad name is
> Calvin Mcalpine

> Calmesha Givings dad name is
> Calvin Givings Calmesha Giving and Joseph
> is married story about Joseph Jackson
> and Katherine Jackson
>
> THIRD CAUSE OF ACTION
> We all attended East Gate Church
> Hudson St Syracuse N.Y.
> Jason S Lebron grandma has a resturant
> named ruby's soul food Calvin Mcalpine
> grandma Mrs ruby has a resterant named
> Ruby's soul food South ave that
> was closed down

(Dkt. No. 1 at 3 [errors in original].) In the facts portion of Plaintiff's Complaint that was filed on the Civil Complaint pursuant to Title VII of the Civil Rights Act, as amended form, Plaintiff alleges as follows:

> Game chess
> St Chester
> Chestor the melostor "Jessy" old man
> White Calvin "Lepercones"
> Patrick "Lepercones"
> Franky "Lepercones"
> 20$ 3-15 President Andrew Jackson B-day deaf date 6-8
> Syracuse N.Y. area code (315) Human cloning AS863
> 2-7S 7-12S Calendar Telepathies
> And Human Trafficing children with lead poinson

(Dkt. No. 1 at 7 [errors in original].)

As the Complaint is currently drafted, the Court is unable to meaningfully analyze, whether, and to what extent, Plaintiff has pleaded any colorable claim against Defendant. (*See generally* Dkt. No. 1.) Plaintiff's Complaint places an unjustified burden on the Court and, ultimately, on Defendant " 'to select the relevant material from a mass of verbiage.' " *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)).

As a result, I recommend the complaint be dismissed as frivolous. *See, e.g., Gillich v. Shields*, 18-CV-0486, 2018 WL 2926299 (N.D.N.Y. Apr. 30, 2018) (Peebles, M.J.), *report and recommendation adopted by* 2018 WL 2926302, at \*3 (N.D.N.Y. Jun. 8, 2018) (D'Agostino, J.); *Canning v. Hofmann*, 15-CV-0493, 2015 WL 6690170, at \*5 (N.D.N.Y. Nov. 2, 2015) (Hurd, J.) ("Under these circumstances, having found that none of the allegations in Plaintiff's meandering

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00197-DNH-ML Document 7 Filed 06/11/24 Page 66 of 76

and indecipherable Complaint raise a cognizable cause of action, the Court concludes that the Complaint fails to state a claim upon which relief may be granted and is subject to dismissal."); *see also Salahuddin*, 861 F.2d at 42 ("Dismissal [for failure to comply with the requirements of Rule 8 of the Federal Rules of Civil Procedure] ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.").

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [2]

**\*5** In this case, because the Court already afforded Plaintiff an opportunity to amend her Complaint in *Smith I* and *Smith II*, and recommended that she be provided an opportunity to amend her Complaint in *Smith III*, and as set forth *infra*, each of Plaintiff's complaints and attempts at amendments have been deemed frivolous, I find that the Court need not grant Plaintiff an opportunity to amend. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.'"); *Hall v. Clinton Cnty.*, 18-CV-1405, 2020 WL 1923236, at *7 (N.D.N.Y.

Apr. 21, 2020) (Suddaby, C.J.) (dismissing without leave to amend the *pro se* plaintiff's amended complaint where the court "already afforded Plaintiff an opportunity to amend his Complaint"); *Carrasco v. Annucci,* 17-CV-0246, 2017 WL 6492010, at *2 (N.D.N.Y. Dec. 15, 2017) (Suddaby, C.J.) (dismissing a complaint pursuant to 28 U.S.C. § 1915(e)(2) (B) without leave to amend "because plaintiff has already had two opportunities to amend the complaint"); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

Moreover, the Court notes that after a careful review of the Complaint, there is no possible amendment to that Plaintiff could propose that would state a claim against Defendant. Plaintiff's allegations are "exactly the type of claims that the courts refer to as 'fanciful' or 'frivolous,' and clearly not 'plausible' on their face. Such claims cannot be cured by amendment and must be dismissed without leave to replead." *Smith v. Bush*, 18-CV-1252, 2018 WL 10550928, at *4 (N.D.N.Y. Nov. 1, 2018) (Baxter, M.J.) (citing *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless—that is, they are fanciful, fantastic, or delusional")), *report and recommendation adopted by*, 2018 WL 10550926 (N.D.N.Y. Dec. 3, 2018) (Kahn, J.).

As a result, I recommend that Plaintiff's Complaint be dismissed without leave to amend.

## VI. RECOMMENDATION OF BAR ORDER

Courts have always recognized that they may resort to restrictive measures when responding to vexatious litigants. *In re Martin-Trigona*, 9 F.3d 226, 228-29 (2d Cir. 1993) (noting that the Supreme Court and other Circuits have imposed restrictive measures). The Court has the obligation to protect the public and the efficient administration of justice from individuals who have a history of vexatious and harassing litigation because it imposes needless expense on the parties and an unnecessary burden on the court. *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000). In this context, courts have accepted the need for permanent injunctions as a result of extraordinary patterns of vexatious, harassing, and baffling litigation practices. *In re Aarismaa*, 233 B.R. 233, 247 (N.D.N.Y. 1999) (McAvoy, C.J.); *Toro v. Depository Trust Co.*, 97-CV-5383, 1997 WL 752729, at *4 (S.D.N.Y. Dec. 4, 1997) (identifying the All Writs Act as a legal basis to impose sanctions and enjoin a plaintiff who abuses the judicial process).

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 67 of 76

Under the All Writs Act, 28 U.S.C. § 1651, a court may sanction a vexatious litigant who abuses the judicial process by enjoining him from pursuing future litigation without leave of the court. *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 250 (2d Cir. 2004); *Malley v. New York City Bd. of Educ.*, 112 F.3d 69, 69-70 (2d Cir. 1997). An enjoinder may be permanent or may impose the less drastic remedy of a "leave to file" requirement. *In re Sassower*, 20 F.3d 42, 44 (2d Cir. 1994) (noting the court's ability to levy a leave to file requirement); *Raffee v. John Doe*, 619 F. Supp. 891 (S.D.N.Y. 1985) (granting a permanent injunction restraining the plaintiff from filing any further actions); *In re Aarismaa*, 233 B.R. at 247 (observing that such "restrictive measure[s] have included foreclosing the filings of pleadings in a particular case or requiring that leave of court first be sought").

**\*6** Before regulating a truculent and persistent litigant by restricting future access to the court, a court should consider

> (1) the litigant's history of the litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, and in particular whether the litigant has a good faith expectation of prevailing; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Toro*, 1997 WL 752729, at \*4 (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

It is clear that Plaintiff fits the mold of a pestilent litigator who can only be estopped from pursuing frivolous litigation by sanctions more austere than dismissing her actions. First, a review of Plaintiff's litigation history shows that all of her filed claims are frivolous. Second, Plaintiff could not have had a good faith expectation of prevailing in her civil actions as they not only patently lack any legal basis, but she has already been told by multiple federal judges of this fact.

Third, although Plaintiff is a *pro se* litigant, she has filed four lawsuits in the Northern District of New York and she has appealed to the Second Circuit Court of Appeals. In each instance, Plaintiff has been informed of the shortcomings of her pleadings/appeals, and has received explicit direction as to how to remedy and replead, all of which has fallen on deaf ears. Fourth, Plaintiff has caused needless harassment and burden on the Court in having to understand the basis for her filings, only to discover that she has already presented the very same (or substantially similar) claims to other judges, but because she did not like the result, she insists on refiling, presumably until she obtains the desired result of monetary compensation. Plaintiff has unquestionably taxed the resources of this Court because "[e]very paper [she has] filed with the Clerk of this Court, no matter how repetitious or frivolous, require[d] some portion of the institution's limited resources." *In re McDonald*, 489 U.S. 180, 184 (1989). Fifth, in light of Plaintiff's litigation history, it does not appear that any other sanction, short of an injunction, will be adequate to protect the Court from Plaintiff's insatiable appetite for continued litigation. *See Ulysses I & Co., Inc. v. Feldstein*, 01-CV-3102, 2002 WL 1813851 (S.D.N.Y. Aug. 8, 2002), *aff'd sub nom, Bridgewater Operating Corp. v. Feldstein*, 346 F.3d 27 (2d Cir. 2003).

Thus, I recommend in addition to dismissal of the within case that, pursuant to 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings, Plaintiff be prohibited from making any future filings in this District without prior leave of the Chief Judge. *See Yefimova v. Trustco Bank*, 17-CV-0730, 2017 WL 4216987, at \*3-4 (N.D.N.Y. July 31, 2017) (Stewart, M.J.) (recommending a bar order where the plaintiff was deemed a persistent, frivolous litigator), *report and recommendation adopted by*, 2017 WL 4157337 (N.D.N.Y. Sept. 18, 2017) (Suddaby, C.J.).

**\*7** **ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED** as moot; and it is further

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and it is further respectfully

**RECOMMENDED** that Plaintiff be permanently enjoined from filing any other cases in this District without leave of

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 68 of 76

the Chief District Judge. As noted below, Plaintiff will be provided a brief period of time for her to lodge any objections she has to this Court's recommendations. Plaintiff may choose to use that opportunity to also address the recommendation barring her from filing cases in this District without prior permission; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); *Fed. R. Civ. P.* 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3518327

---

## Footnotes

1    The Court notes that Plaintiff's Complaint also purports to list several other individuals as defendants. More specifically, in various sections, the Complaint lists as defendants "Clause Act," "12-24," "Christmas Eve," "Patriot's act," and "AS863 Bill" (Dkt. No. 1 at 1), "Shawn Corey Carter" and "Beyonce Giselle Knowles" (*id.* at 2), "12-25," "The Holey Bible King James," "James M. Hanley," and "Andrew Jackson," (*id.* at 5), "Katherine Jackson" (*id.* at 6), "Christopher George Latore Wallace" (*id.* at 10), "Erika Badoo" and "Willow Smith" (*id.* at 11), "Wassam Al Mana" and "Saints Purge Masters Purge Jewels Calendar" (*id.* at 14), "James Madison (Africa)" (*id.* at 18), and "James Monroe (Africa)" and "James K. Polk (Africa)" (*id.* at 19). In addition, the Complaint appears to list several other individuals as plaintiffs. More specifically, in various sections, the Complaint lists as plaintiffs "A.P.H.," "S.J.H.," "S.L.H.," A.I.L.," and "R.S.S." (*Id.* at 1, 5, 10, 14, 18.) However, the Complaint is incomprehensible and contains a myriad of clearly frivolous statements, which do not appear to have any connection to any of the alleged plaintiffs or defendants. As a result, it is unclear whether Plaintiff intended to assert causes of actions against these purported defendants or on behalf of these purported plaintiffs or whether the notations are merely additional nonsensical allegations.

2    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

3    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Smith v. Jackson, Not Reported in Fed. Supp. (2021)

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 69 of 76

2021 WL 2775003
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rikisha S. SMITH, Plaintiff,

v.

Joseph JACKSON, Defendant.

5:21-CV-0005 (MAD/ML)
|
Signed 07/02/2021

**Attorneys and Law Firms**

RIKISHA S. SMITH, 223 Otisco Street, Syracuse, New York 13204, Plaintiff, Pro Se.

## ORDER

Mae A. D'Agostino, U.S. District Judge:

**\*1** On January 5, 2021, Plaintiff commenced this action against numerous Defendants including Joseph Jackson, Shawn Corey Carter, Beyonce Giselle Knowles, Andrew Jackson, Katherine Jackson, Erika Badoo, Willow Smith, Patriots, Saints, James Madison, James Monroe, and James K. Polk. *See* Dkt. No. 1. Plaintiff's complaint alleges causes of action under 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634(b), American with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See generally id.* The instant complaint is the latest in a string of unintelligible and incoherent pleadings filed by Plaintiff in this District. As with each of the other complaints, two of which have been reviewed by the undersigned, Plaintiff has failed to plausibly allege any entitlement to relief. Accordingly, this action is dismissed with prejudice. and this action is accordingly dismissed with prejudice. Additionally, in light of Plaintiff's history of frivolous filings, the Court will refer to Chief Judge Glenn T. Suddaby the recommendation from Magistrate Judge Lovric that Plaintiff be permanently enjoined from filing any other case in this District without leave of the Chief Judge, unless represented by counsel.

In an Order and Report-Recommendation dated January 11, 2021, Magistrate Judge Lovric denied Plaintiff's *in forma pauperis* ("IFP") application as moot, as Plaintiff had already paid the statutory filing fee. *See* Dkt. No. 5 at 5. Additionally, Magistrate Judge Lovric performed an initial review of the complaint and recommended that the Court dismissed Plaintiff's complaint without leave to replead. *See id.* at 6. Magistrate Judge Lovric found that Plaintiff's complaint was "comprised of twenty-one pages of incoherent text written on every form-complaint from the Clerk's office." *Id.* at 6. Further, Magistrate Judge Lovric found that, "[a]s the Complaint is currently drafted, the Court is unable to meaningfully analyze, whether, and to what extent, Plaintiff has pleaded any colorable claim against Defendant." *Id.* at 7. While noting the policy in this Circuit of affording *pro se* litigants the opportunity to amend their pleadings prior to outright dismissal, Magistrate Judge Lovric nevertheless recommended that this action be dismissed without leave to amend. Id. at 7–9. In addition, Magistrate Judge Lovric undertook a thorough and comprehensive review of each of the prior cases filed by Plaintiff in this District. *See id.* at 2–5. Two of the three suits have been dismissed as frivolous, and the last one is currently before the undersigned. *See id.* As such, Magistrate Judge Lovric found that Plaintiff "fits the mold of a pestilent litigator who can only be estopped from pursuing frivolous litigation by sanctions more austere than dismissing her actions." *Id.* at 11. Magistrate Judge Lovric recommended "in addition to dismissal of the within case ... [with] the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings, Plaintiff [should] be prohibited from making any future filings in this District without prior leave of the Chief Judge." *Id.* at 12. Plaintiff has not objected to the Order and Report-Recommendation.

**\*2** When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell,* 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan,* 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the January 11, 2021 Order and Report-Recommendation, Plaintiff's complaint and the applicable law, the Court finds that Magistrate Judge Lovric correctly determined that the complaint should be dismissed. A review of Plaintiff's complaint makes clear that it suffers from several deficiencies. Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991). An opportunity to amend, however, is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993).

Here, reading the complaint liberally, there is no "suggest[ion] that the plaintiff has a claim that [she] has inadequately or inartfully pleaded and ... should therefore be given a chance to reframe." *Cuoco,* 222 F.3d at 112. Moreover, the Court agrees with Magistrate Judge Lovric that Plaintiff is "a pestilent litigator who can only be estopped from pursuing frivolous litigation by sanctions more austere than dismissing her actions." Dkt. No. 5 at 11. As such, Magistrate Judge Lovric correctly recommended that the Court dismiss the complaint with prejudice and that Plaintiff should be referred to Chief Judge Suddaby for a determination whether Plaintiff should be permanently enjoined from filing any additional cases in this District without first obtaining leave from the Chief Judge.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Lovric's Order and Report-Recommendation (Dkt. No. 5) is **ADOPTED in its entirety** for the reasons set forth therein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with prejudice;** and the Court further

**ORDERS** that the Court refers to Chief Judge Suddaby the recommendation by Magistrate Judge Lovric that Plaintiff be permanently enjoined from filing any other case in this District without leave of the Chief Judge, unless she is represented by counsel; and the Court further

 **\*3 ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2775003

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:24-cv-00197-DNH-ML   Document 7   Filed 06/11/24   Page 71 of 76

Herschaft v. New York City Police Department, Not Reported in Fed. Supp. (2018)

2018 WL 4861388
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Allen S. HERSCHAFT, Plaintiff,

v.

NEW YORK CITY POLICE DEPARTMENT; F.B.I.;
Department of Homeland Security; U.S. Supreme
Court; Eastern Federal District Court; Southern
Federal District Court; 2nd Circuit Court of Appeals
En Banc; Chief Justice Johnny Walker of the Second
Circuit; NY City Board of Elections; NY State Board
of Elections; NY City Council Legal Division; NY
City Council; NY City Campaign Finance Board;
Various Lawyers At the Corporation Counsel of NY
City; Manhattan Supreme Court; Brooklyn Supreme
Court; Anthony Weiner, Former NY Congressman;
U.S. Senator Chuck Schumer; Governor Andrew
Cuomo; and Mayor Bill DeBlasio, Defendants.

18-CV-4770 (WFK)
|
Signed 09/27/2018
|
Filed 09/28/2018

**Attorneys and Law Firms**

Allen S. Herschaft, Brooklyn, NY, pro se.

**MEMORANDUM AND ORDER**

HON. WILLIAM F. KUNTZ, II, UNITED STATES
DISTRICT JUDGE

 **\*1**  Allen S. Herschaft ("Plaintiff") filed this *pro se* complaint
on August 21, 2018. On September 6, 2018, Plaintiff filed a
document in support of his complaint titled "Memorandum of
Law." The Court grants Plaintiff's request to proceed *in forma
pauperis* pursuant to 28 U.S.C. § 1915 solely for the purpose
of this Order. For the reasons discussed below, the complaint
is dismissed.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss
an *in forma pauperis* action where it is satisfied that the action
"(i) is frivolous or malicious; (ii) fails to state a claim on
which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief." At the
pleadings stage of the proceeding, the Court must assume the
truth of "all well-pleaded, nonconclusory factual allegations"
in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621
F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556
U.S. 662 (2009) ). A complaint must plead sufficient facts to
"state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Furthermore, it
is axiomatic that *pro se* complaints are held to less stringent
standards than pleadings drafted by attorneys and the Court
is required to read the plaintiff's *pro se* complaint liberally
and interpret it to raise the strongest arguments it suggests.
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hughes v. Rowe*,
449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant #1*,
537 F.3d 185, 191-93 (2d Cir. 2008).

However, the Supreme Court has held that a district court
has "the authority to 'pierce the veil of the complaint's
factual allegations' " when considering an *in forma pauperis*
complaint. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).
The Court further stated that "a court is not bound ... to
accept without question the truth of the plaintiff's allegations.
We therefore reject the notion that a court must accept 'as
having an arguable basis in fact,' all allegations that cannot be
rebutted by judicially noticeable facts." *Id.* (citation omitted).

**DISCUSSION**

Plaintiff alleges he is under surveillance and "[t]his court
will have to make a determination for how long Plaintiff was
under surveillance and or on the terrorist watch list, determine
how that determination was made that Plaintiff be put under
surveillance and on the terrorist watch list and whether it was
legal." Compl. at 3, ECF No 1. In his Memorandum of Law,
Plaintiff states:

> at or about last year, on the
> Charlie Rose program interview on
> Bloomberg television, of a homeland
> security head or former head at the
> defense dept., one of these leaders
> claimed that I was an inveterate
> terrorist who had been heard on

Case 3:24-cv-00197-DNH-ML    Document 7    Filed 06/11/24    Page 72 of 76

Herschaft v. New York City Police Department, Not Reported in Fed. Supp. (2018)

surveillance telling his girlfriend, bragging to his girlfriend that Ben Bernacke at the time the head of the Federal Reserve, needed to take anti-anxiety medication to deal with, cope with, his public speaking difficulties. And it was for this reason that I have brought suit against defendants figuring that I was being subjected to surveillance and or being put on the terrorist watchlist, needlessly, unlawfully, and unnecessarily.

**\*2** Memorandum of Law at 4, ECF No. 4. Plaintiff further states in his complaint:

US Senator Chuck Schumer had once served as plaintiff's state assemblyman back in the 1970's. My mother knew him personally possibly my father too. Schumer for many years gave speeches in the [C]atskills mountains in upstate ny which members of my family often attended given possibly by the UJA federation at their annual meetings held during the summer. Whether defendant Schumer breached a duty to inform plaintiff or members of plaintiff's family that plaintiff was on the terrorist watchlist for the US and or breached any duty he had to plaintiff by not ever mentioning formally to plaintiff that he was under police surveillance at that current point of time.

Compl. at 4.

Plaintiff's complaint and Memorandum of Law do not present any cognizable claims against any defendant. Plaintiff's allegations, even under the very liberal reading afforded to *pro se* pleadings (and even if Plaintiff believes them to be true), can only be described as frivolous and "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as factually frivolous if the sufficiently well-pleaded facts are clearly baseless—that is, they are fanciful, fantastic, or delusional." (quotation marks and citation omitted) ). "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton*, 504 U.S. at 33; *Khalil v. United States*, 17-CV-5458, 2018 WL 443343, at \*3 (E.D.N.Y. Jan. 12, 2018) (Bianco, J.); *Bussie v. IRS Commissioner*, 16-CV-7006, 2017 WL 395113, at \*3 (E.D.N.Y. Jan. 27, 2017) (Brodie, J.). Since the complaint is devoid of any basis in law or fact, defects which cannot be cured by amendment, this frivolous action must be dismissed without leave to replead. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## CONCLUSION

Accordingly, Plaintiff's complaint, filed *in forma pauperis*, is dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to enter judgment and close this case.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4861388

---

2010 WL 7746199
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Michael CHICHERCHIA, Plaintiff,

v.

FOX STUDIOS, Defendant.

No. 10–CV–0278WMS.
|
July 26, 2010.

**Attorneys and Law Firms**

Michael Chicherchia, Fallsburg, NY, pro se.

### *DECISION and ORRDER*

WILLIAM M. SKRETNY, Chief Judge.

### *INTRODUCTION*

**\*1** Plaintiff Michael Chicherchia has filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1) and has requested permission to proceed *in forma pauperis.* (Docket No. 7). Plaintiff has also filed a number of motions for appointment of counsel (Docket Nos. 3, 5, and 13) and a motion for default judgment (Docket No. 12). Plaintiff claims, as best as the Court can discern, that an Elmira inmate stole one or more letters from him, and that defendants Fox Studios, N.B.C. Studios, Ray Romano, Jeff Foxworthy, and the Chrysler Corporation used those stolen letters to slander him in television shows and commercials broadcasted nationwide. (Docket No. 1, Complaint). For the reasons discussed below, plaintiff's request to proceed as a poor person is granted and the complaint is dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B)(i) and 1915A.

### *DISCUSSION*

A. *Standard of Review*
Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), plaintiff is granted permission to proceed *in forma pauperis.* Section 1915(e)(2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis*

status has been granted if, at any time, the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) (citing *Shakur v. Selsky,* 391 F.3d 106, 112 (2d Cir.2004)). In addition, 28 U.S.C. § 1915A(a) requires the Court to conduct an initial screening of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.,* regardless of whether or not the inmate has sought *in forma pauperis* status under 28 U.S.C. § 1915.

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage,* 318 F.3d 138, 139 (2d Cir.2003) (per curiam); *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Moreover, a court is obliged to construe *pro se* pleadings liberally, *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (per curiam), and a *pro se* complaint should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997). "The policy of liberally construing pro se submissions is driven by the understanding that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.' " *Abbas,* 480 F.3d at 639 (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)).

**\*2** Nevertheless, even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon,* 360 F.3d 73 (2d Cir.2004). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (internal quotation marks and citation omitted). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal,* ⸻ U.S. ⸻, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks and citation omitted). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas,* 480 F.3d at 639 (quoting *Gomez v. USAA Federal Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999) (per curiam)).

B. *Plaintiff's Claims*

Plaintiff alleges, as the best the Court can discern, that an inmate at Elmira Correctional Facility stole a letter he had written on August 16, 2008 (Docket No. 1, Complaint, at ¶ 5A), which contained several ideas related to the economy. He had intended to send the letter to a past teacher at the Utica School of Commerce, who was to then forward the letter to several politicians. (Docket No. 8, Letter from Plaintiff, dated April 29, 2010, Inmate Grievance Report, at 6).[1] Plaintiff also references a second letter that was stolen, which he intended to send to George W. Bush and the Federal Bureau of Investigations Office in Utica, that concerned his ideas on foreign and domestic policy. (Docket No. 10, Letter dated May 5, 2010, at 3–7).

Plaintiff claims that after the inmate stole these letters, he then sold them to the media, receiving 10% of the profits from a week-long show aired on N.B.C. or Fox[2] between August 18, 2008 and August 26, 2008. (Docket No. 1, Complaint, at ¶ 5A). Plaintiff describes this week-long show as "a movie where John McCain and the person portraying me acted as Nazis and the purpose of the movie was to kill Obama. The first words [in the movie] came from ... a little girl saying, 'Michael Chicercia didn't molest me, Barack Obama molested me ....' " (Docket No. 10, at 12–13). Plaintiff alleges that this show slandered him by repeatedly referring to him as a rapist.

Plaintiff also claims that his letters were used by the Chrysler Corporation to make two commercials for the Dodge Grand Caravan. Plaintiff states that the first commercial said "Get away from Michael Chicercia," and the second one said "Don't vote for McCain and Michael Chicercia is serving time in Attica." (Docket No. 1, Complaint, at 6). Plaintiff also alleges that "armed with 2 of [his] letters," Jeff Foxworthy slandered him in an episode of "Are You Smarter than a Fifth Grader?" by calling him a rapist more than ten times, and Ray Ramano slandered him by calling him a rapist in over thirty

episodes of "Everybody Loves Raymond." *Id;* (Docket No. 10, at 13).

**\*3** The same statute that allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* "authorizes federal courts to dismiss a claim filed *in forma pauperis* 'if satisfied that the action is frivolous ....' " *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), citing to what is now 28 U.S.C. § 1915(e).

Section 1915[e] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suits and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit ... and claims of infringement of a legal interest which clearly does not exist .... Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.

*Id.* at 327–28, 1833 (citation omitted). The United States Supreme Court elaborated on this "power to pierce the veil of the complaint's factual allegations" a few years later:

[T]he § 1915[e] frivolousness determination, frequently made *sua sponte* before the defendant has even been asked to file an answer, cannot serve as a factfinding process for

the resolution of disputed facts ....
[A] court may dismiss a claim
as factually frivolous only if the
facts alleged are "clearly baseless,"
a category encompassing allegations
that are "fanciful," "fantastic," and
"delusional." As those words suggest,
a finding of factual frivolousness is
appropriate when the facts alleged rise
to the level of the irrational or the
wholly incredible, whether or not there
are judicially noticeable facts available
to contradict them.

*Denton v. Hernandez,* 504 U.S. 25, 32–33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (quoting *Neitzke,* 490 U.S. at 327). Moreover, while the usual practice is to allow leave to replead a deficient complaint, *see* Fed.R.Civ.P. 15(a); *see also Ronzani v. Sanofi, S.A.,* 899 F.2d 195, 198 (2d Cir.1990), especially where a complaint has been submitted *pro se, Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994), such leave may be denied where amendment would be futile. *Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir.2002). Based on its evaluation of the complaint, the Court finds that plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A and leave to amend be denied because the Court concludes that the complaint is "frivolous."

### CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a). Accordingly, plaintiff's request to proceed *in forma*

*pauperis* is granted and, for the reasons discussed above, the complaint is dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A.

**\*4** The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### ORDER

IT HEREBY IS ORDERED, that plaintiff's request to proceed *in forma pauperis* is granted;

FURTHER, that the complaint is dismissed with prejudice;

FURTHER, that the motions for appointment of counsel (Docket Nos. 3, 5 and 13) and motion for a default judgment (Docket No. 12) are denied as moot; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 7746199

### Footnotes

1    In addition to the complaint, plaintiff has filed a number of letters to the Court which further explain or elucidate his claims. In liberally construing a *pro se* complaint to "raise the strongest arguments that they suggest[,]" *Triestman v. Fed. Bur.of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (citation, internal quotation marks and emphasis omitted), the court may consider affidavits or other documents submitted by the *pro se* litigant. *See Braxton v. Nichols,* No. 08 Civ. 08568(PGG), 2010 WL 1010001, at \*7 (S.D.N.Y. March 18, 2010 (court will consider facts alleged in and documents attached to Plaintiff's opposition papers); *Ibok v. Sector,* No. 05 Civ.6584 MBM, 2006 WL 302336, at \* 1, n. 1 ("The Court may consider the factual allegations in plaintiff's

Response to supplement those in his complaint because of the liberal standard afforded to the pleadings of pro se litigants.") (citations omitted.)

2    In a letter to the Court dated May 5, 2010, plaintiff states, "After every episode, I could hear the N.B.C. chimes, however, I suspect the Olympics were still on. I suspect the actual show was done on Fox. I intend to request for transcripts from N.B.C. and Fox for the following dates: 8/16/08 till [sic] 8/28/08." (Docket No. 10, at 11).

---

**End of Document**            © 2024 Thomson Reuters. No claim to original U.S. Government Works.